**STATE of Missouri, Respondent,**

v.

**Lester T. SAMPLE, Appellant.**

No. 12980.

Missouri Court of Appeals,
Southern District,
Division Three.

May 16, 1984.

John A. Layton, Cape Girardeau, for appellant.

John Ashcroft, Atty. Gen., Janet E. Papageorge, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

A jury found appellant guilty of the class D felony of an attempt to commit the offense of receiving stolen property having a value of $150 or more, §§ 564.011 and 570.-080, RSMo 1978, and assessed his punishment at six months' imprisonment in the county jail. The trial court imposed that sentence.

Appellant contends he committed no crime, inasmuch as the property he received, an Ingersoll-Rand model 2001 Redi-Ratchet rechargeable electric impact tool, was not in fact stolen, having been purchased at retail by a police detective specifically for use in the transaction from which this prosecution arose. Appellant also asserts the trial court erred in (a) denying appellant's request for production of two pages of a police department file, (b) failing to include a definition of "substantial step" in the jury instructions, and (c) failing to grant a new trial *sua sponte* because the

assistant prosecuting attorney improperly cross-examined appellant's character witness.

The evidence, viewed in the light most favorable to the verdict and ignoring appellant's evidence except where favorable to the prosecution, *State v. Wood*, 596 S.W.2d 394, 400[10] (Mo. banc 1980), *cert. denied*, 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980), discloses that in the spring of 1982, the Cape Girardeau Police Department was investigating certain employees of that city's Public Works Department who were suspected of theft and misuse of city property and receiving stolen property. Appellant, the "shop superintendent" at the city garage, was one of the suspects.

Fred P. "Fast Freddie" Jones, a parolee from the Division of Corrections,[1] was employed on a trash truck in the city's Sanitation Department.

On April 2, 1982, Jones, at the direction of Cape Girardeau police detective William B. McHughes, met McHughes and Chief of Detectives Michael Seib at the police station. McHughes told Jones the police had information that he had stolen tools, paint and other city property and had sold it or given it away. The investigation indicated Jones was doing this for appellant and another man. McHughes explained to Jones that this might be a violation of his parole.

Jones recalled McHughes saying that he (Jones) should help in the investigation of the Public Works Department, otherwise he might get his parole revoked. Jones knew he could be sent back to prison if the police proved he had stolen property from the city garage.

Jones agreed to assist the police, and on April 7, 1982, Jones, at the instance of Seib, telephoned appellant. Jones, unbeknown to appellant, made the call in Seib's office, Seib recording the conversation on tape. Appellant received the call at the city garage.

Jones, who had known appellant several years and had sold appellant stolen goods

---

**1.** Jones received a four year sentence April 6, 1981, for receiving stolen property. He was released from the penitentiary December 11, 1981.

"numerous times," told appellant, "Hey, my boy just came down here, they got some goodies." Jones added, "You know, got some impact wrenches, tools, you know, hand tools, 35mm camera." Jones asked appellant whether he was going to be interested in some of it, and appellant said he might. Appellant instructed Jones to come by appellant's shop about 4:30 that afternoon. (Appellant, in addition to working for the City of Cape Girardeau, also operated Riverfront Auto, an automobile body shop.)

After the telephone conversation between Jones and appellant, Seib directed detective sergeant John Brown to buy a tool for use in the scheme. Brown bought the Redi-Ratchet at an auto parts store, paying $180.

Jones, who was reluctant to "burn"[2] appellant because of their long friendship, enlisted a cousin, Tommy Burnett, to offer the Redi-Ratchet to appellant.

McHughes concealed a microphone and transmitting device beneath Jones' clothing, and Brown turned the Redi-Ratchet over to Jones. The ratchet was in the box in which it was purchased, marked with the price, $180.

Jones and Burnett then drove to Riverfront Auto in Jones' vehicle. Seib, McHughes and other officers went along in separate vehicles, parking nearby for surveillance. McHughes was equipped with a receiver and recorder to monitor Jones' transmitter.

Jones and Burnett waited a short time in Jones' vehicle, then appellant appeared and the three talked "a minute or two." The trio then entered Riverfront Auto, Burnett carrying the box containing the Redi-Ratchet.

In appellant's office, Jones told appellant the Redi-Ratchet was "real hot," and Burnett told appellant "it was real hot and he had to get rid of it." Burnett said he wanted $25 for the ratchet; appellant said he might have to rob his piggy bank as he might not have that much. After brief negotiations, they agreed on a price of $15, and appellant paid that sum to Burnett. Jones told appellant he (Jones) would bring the other items—wrenches and hand tools—down the next day. Appellant said he would take a look at them.

Before Jones and Burnett left, appellant placed his hands on Jones and felt the transmitting device. Appellant asked, "Are you wired up, boy?"

Jones replied, "No, I hurt my back."

As Jones and Burnett were departing, appellant asked Jones if Burnett was "all right." Jones answered that Burnett had never done him wrong in all the years Jones had been doing business with him, and that Burnett was all right.

Jones and Burnett then drove away, leaving the Redi-Ratchet with appellant. The police paid Burnett $100 for his services; Burnett gave half to Jones.

At trial, the tape recordings of Jones' phone call to appellant and the conversation between Jones, Burnett and appellant at Riverfront Auto were played for the jury.

■ We deal first with appellant's contention that he was not guilty of an attempt to receive stolen property because the Redi-Ratchet was never stolen.

This argument, the so-called "legal impossibility" defense, was rejected in *State v. Hunt*, 651 S.W.2d 587 (Mo.App.1983), a case of first impression in Missouri. We agree with the rationale in *Hunt*, and need not repeat it here. *Hunt* upheld a conviction of attempting to receive stolen property, on facts indistinguishable from those before us. Appellant's contention is denied.

■ We next consider appellant's complaint that the trial court erred in failing to include a definition of the term "substantial step" in its instructions to the jury.

The verdict directing instruction (instruc-

2. Jones explained that by "burn," he meant "set     him up."

tion 5 at trial)[3] was based on MAI–CR 2d 18.02, the pattern instruction on attempts approved by the Supreme Court of Missouri en banc and made effective January 1, 1979. MAI–CR 2d p. XIII.

Note on Use 3 under MAI–CR 2d 18.02 provides, in pertinent part:

"Whether the object crime is defined or not, if MAI–CR 2.06 is given, the following term must be defined in a separate instruction, whether requested or not:

'substantial step.' "[4]

There is, of course, no pattern instruction numbered 2.06 in MAI–CR 2d, and there was none at the time of appellant's trial. Consequently, Note on Use 3, *as written*, did not then, and does not now, require the trial court to define "substantial step" for the jury.

There was, however, a pattern instruction numbered 2.06 in MAI–CR, the precursor of MAI–CR 2d. That instruction (MAI–CR 2.06) was the pattern instruction that dealt with attempts prior to January 1, 1979, the effective date of the The Criminal Code, Laws 1977, pp. 662–718. The section of The Criminal Code pertaining to attempts is § 564.011, RSMo 1978. The prior statute regarding attempts, § 556.150,

RSMo 1969, was repealed effective January 1, 1979. Laws 1977, pp. 662–63 and 718.

The obvious inference from all of this is that when the portion of Note on Use 3 quoted above was drafted, the draftsman inadvertently used the number for the MAI–CR pattern instruction on attempts (2.06) instead of the MAI–CR 2d pattern instruction on attempts (18.02). Appellant therefore entreats us, in reading the Note on Use, to substitute "MAI–CR 2d 18.02" for "MAI–CR 2.06."

The State argues that even if we do, reversal is not required, inasmuch as appellant was not prejudiced by the absence of an instruction defining "substantial step." The State correctly points out that not every deviation from the Notes on Use in MAI–CR 2d produces a fatal result. *State v. Billingsley*, 534 S.W.2d 484, 485[3] (Mo. App.1975). The prejudicial effect of noncompliance is to be judicially determined. Rule 28.02(e).[5] Noncompliance, absent prejudice to the defendant, will not cause a reviewing court to overturn a determination of guilt by the trier of fact. *State v. Mee*, 643 S.W.2d 601, 604[7] (Mo.App.1982).

Accordingly, our task is to determine whether appellant was prejudiced by the omission. In doing so, we note the only issue the jury had to resolve was whether appellant believed the Redi-Ratchet had

---

**3.** Instruction 5 says:

"If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about the 7th day of April, 1982, in the County of Cape Girardeau, State of Missouri, the defendant received one Redi-Ratchet rechargeable electric impact tool of a value of at least one hundred and fifty dollars, and

Second, that such conduct was a substantial step toward the commission of the crime of receiving stolen property of a value of at least one hundred and fifty dollars, being a Redi-Ratchet rechargeable electric impact tool owned by the City of Cape Girardeau, and was done for the purpose of committing such offense of receiving stolen property of a value of at least one hundred and fifty dollars, then you will find the defendant guilty of an attempt to commit the offense of receiving stolen property of a value of at least one hundred and fifty dollars.

However, if you do not find and believe from the evidence beyond a reasonable doubt each

and all of these propositions, you must find the defendant not guilty of that offense.

If you do find the defendant guilty of an attempt to commit the offense of receiving stolen property of a value of at least one hundred and fifty dollars, you will assess and declare the punishment at:

1. Imprisonment in the division of corrections for a term of years fixed by you, but not less than two years and not to exceed five years, or

2. Imprisonment in the county jail for a term fixed by you but not to exceed one year."

**4.** MAI–CR 2d 33.01 states:

"Substantial step (towards the commission of an offense).

Means conduct which is strongly corroborative of the firmness of a purpose to complete the commission of the offense. [564.011.1]."

**5.** Rule references are to Missouri Rules of Criminal Procedure (13th ed. 1982).

been stolen when he bought it.[6] Appellant, testifying in his own defense, admitted buying the ratchet for $15, but insisted that because of a "hearing problem," he did not hear Jones or Burnett say the ratchet was "hot" when they negotiated the sale. Appellant admitted buying items from Jones on earlier occasions, but never anything that was stolen. Appellant explained that Jones had always referred to items he offered to sell appellant as "goodies."

Having noted this, we next take account of the significance of the term "substantial step" in prosecutions for attempts to commit offenses. The applicable statute, § 564.011, RSMo 1978, provides, in pertinent part:

"1. A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. A 'substantial step' is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense."

The Comment to § 564.011 by the Committee to Draft a Modern Criminal Code, Vol. 40, V.A.M.S., pp. 385–87 (1979), explains that the statute limits attempt offenses to "purposive conduct," that is, conduct indicative of the actor's purpose to complete the offense. The Comment lists several examples of conduct that may be strongly indicative of the actor's criminal purpose, and thus amount to a substantial step. The examples include lying in wait, searching for or following the contemplated victim of the offense, reconnoitering the place contemplated for the commission of the offense, possession of materials to be employed in the commission of the offense, which are specifically designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances, and other such examples. The Com-

ment points out that the emphasis is on what has already been done, rather than what is yet to be done. The fact that further major steps must be taken by the actor to complete the offense attempted does not render an act insubstantial.

In the instant case, the jury did not have to decide whether appellant's conduct manifested an intent to receive the Redi-Ratchet, or amounted to a substantial step toward that objective. Appellant, by his own testimony, did in fact receive the ratchet, paying the agreed price therefor. Indeed, appellant testified he still had the ratchet in his possession at time of trial, five months after buying it. Appellant's conduct, therefore, was not of a preliminary or preparatory character, subject to possible conflicting inferences, but was instead a completed act of receiving—and paying for—the ratchet. In such circumstances, appellant could not have been prejudiced by the trial court's failure to define "substantial step" for the jury. The point is without merit.

We next turn to appellant's contention that the trial court erred in refusing to compel the State to produce two pages of a police department file. The file, consisting of 124 pages, pertained to the investigation of appellant and the other city employees suspected of stealing and misusing city property. The State voluntarily turned over to appellant a substantial part of the file, but was unwilling to release the remainder because it contained information regarding other crimes unrelated to the instant case. The State argued to the trial court that disclosure of that material would jeopardize the ongoing investigation and betray confidential sources of information.

The trial court examined, *in camera*, the pages the State had withheld, and thereafter entered a pretrial order requiring production of some, but not all, of them. Two of the pages the trial court allowed the

---

**6.** Instruction 6, given by the trial court, says: "The following terms used in these instructions are defined as follows:
RECEIVING STOLEN PROPERTY—A person commits the crime of receiving stolen property if for the purpose of depriving the owner of a lawful interest therein, he receives, retains or disposes of property of another knowing that it has been stolen, or believing that it has been stolen."

State to retain are portions of a transcription of a lengthy tape-recorded conversation between Jones, Seib and McHughes on April 2, 1982. Those are the ones appellant insists he should have had. We refer to them by their respective numbers, 21 and 22.

On page 21, McHughes tells Jones, in substance, that the investigation has produced enough information about Jones' criminal activity at the city garage prior to his imprisonment that "we could charge you." On page 22, in response to Jones' question whether he can be charged for taking city property on his bosses' orders, McHughes tells Jones, "We can handle that. I'm not geared to—I'm not going to take and do nothing to you." Jones replies he is nervous, and McHughes says, "I gave you my word, you may not believe it." McHughes then asks Jones for his help, and to call "if you see anything and hear anything."

Appellant characterizes the foregoing as a threat of a criminal charge against Jones by the police, and a promise not to go through with the threat if Jones cooperates. Appellant asserts Seib and McHughes testified no threats or promises were made to Jones to gain his cooperation. Appellant argues that if pages 21 and 22 had been made available to him before trial, he could have impeached the testimony of Seib and McHughes, and he could have shown that Jones was acting under duress when he aided the police. According to appellant, if the police lacked Jones' "willing consent" to the recording of his conversations with appellant, the recordings should have been suppressed. Appellant also maintains that access to pages 21 and 22 would have given him an "opportunity to more fully establish an entrapment."

The flaw in all this is that pages 21 and 22 contain nothing that was not shown, in substance, by the testimony at trial. As recounted *infra*, McHughes testified he told Jones on April 2, 1982, that the police had information he was stealing city property and selling it or giving it away at the instance of appellant and another man, and that this might be a violation of his parole. Jones testified McHughes told him that he should help in the investigation or he might get his parole revoked.

Pages 21 and 22 say, in esse, the same thing as McHughes' and Jones' trial testimony, and if anything, the trial testimony was more precise on the subject than what appears on pages 21 and 22.

Appellant cites no case indicating that the circumstances under which Jones acted with the police in obtaining appellant's tape recorded statements would be grounds for suppression, and we see *no connection* whatsoever between Jones' motives for helping the police—whatever they were—and a contention that appellant was entrapped. Furthermore, the State's case did not hinge on the credibility of Seib, McHughes or Jones. The telephone conversation between Jones and appellant, and the conversation between Jones, Burnett and appellant at Riverfront Auto, were established by the tape recordings. Appellant does not challenge the integrity of the recordings, and he solemnly admitted at trial that he received and paid for the Redi-Ratchet. Consequently, even if the trial court ruled incorrectly in allowing the State to withhold pages 21 and 22, an issue we need not decide, we fail to detect any prejudice to appellant. The point is denied.

Lastly, we consider appellant's contention that the trial court should have ordered a new trial *sua sponte* because of the assistant prosecutor's cross-examination of appellant's character witness, Leland McDowell.

McDowell testified on direct examination that he had known appellant approximately 15 years and that appellant's reputation for truth and veracity was good. On cross-examination, McDowell was asked whether he had heard that appellant had purchased stolen property from Tony Harris, and whether he had heard that appellant had been receiving stolen property from Jessie Jones. There was no objection to either question. McDowell answered no to both.

■ Not only was there an absence of objection at trial, the matter was ignored in appellant's motion for new trial. Appellant concedes the point was therefore not preserved for review, *State v. Doney*, 622 S.W.2d 227, 230[5] (Mo.App.1981), but urges us to consider the point as plain error under Rule 30.20.

■ In examining for plain error, we observe that the State had a right to ask in good faith if McDowell had heard rumors regarding misconduct of appellant, for if McDowell admitted knowing of the rumors, such knowledge may be treated as inconsistent with previous assertions that appellant's reputation is good. *State v. Harris*, 622 S.W.2d 330, 334[5] (Mo.App.1981); *State v. Siems*, 535 S.W.2d 261, 264 (Mo. App.1976). We are also mindful that such cross-examination of character witnesses ought to be done in good faith, and the crimes inquired about ought not to be apocryphal, existing along in the fertile fancy of a public prosecutor. *Harris*, 622 S.W.2d at 334[6].

■ As there was no objection at trial, there was no occasion for the prosecutor to show the trial judge the information on which the prosecutor based the questions. Nothing in the record suggests, however, that the prosecutor acted in bad faith. Absent such showing, no plain error appears. The point is denied.

Judgment affirmed.

GREENE, C.J., and HOGAN, MAUS and PREWITT, JJ., concur.