**STATE of Missouri, Respondent,**

v.

**Jay Steven SWEENEY, Appellant.**

**No. 66955.**

Supreme Court of Missouri,
En Banc.

Dec. 17, 1985.

Rehearing Denied Jan. 15, 1986.

---

Richard Barry, Robert S. Adler, Ann Lemp, St. Louis, for appellant.

William L. Webster, Atty. Gen., Mark A. Richardson, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Jay Steven Sweeney, convicted by a jury of receiving stolen property, § 570.080,

RSMo 1978,[1] was sentenced to five years in prison and in this appeal contends the trial court erred in the following respects: Failing to direct a verdict for appellant because the evidence disclosed the property received was not stolen; refusing to require a finding by the jury that the property had been stolen before a guilty verdict could be returned; permitting introduction of appellant's tape recorded statements which revealed a prior conviction; failing to suppress evidence seized pursuant to a prospective search warrant; refusing to order disclosure of a confidential police informant; violating appellant's right to a speedy trial.

After reversal in the Court of Appeals-Eastern District the cause was ordered transferred that we might examine the meaning of § 570.080, RSMo 1978 and its application to one who receives the property of another *believing it to be stolen,* but which in fact was *not* stolen. This was the only point addressed by the Court of Appeals.

Appellant's conviction arose from a St. Louis County police undercover operation in which a police department detective, posing as a dealer in stolen goods, was introduced by a confidential informant to appellant's business partner. Following a conversation between the undercover detective and the business partner about buying and selling stolen watches, the detective by telephone arranged a meeting with appellant, who had earlier indicated an interest in purchasing such a watch.

The detective on the next day made a verified application for a warrant to search appellant's business premises. Attacked by appellant as an invalid prospective search warrant, the affidavit and application indicated that arrangements had been made to borrow a watch from a local jeweler and that the warrant would not be executed until the watch was on appellant's premises described in the warrant. On that information the warrant was issued by the court.

Later that day the police *borrowed* a watch, having a retail price of $9,000 and at wholesale, a value of $5,000. The detective, "wired" with a hidden microphone and transmitter, proceeded with the watch to appellant's place of business and waited a short time for appellant and his business partner to arrive. The three went into appellant's office where appellant was shown the watch, was told it was stolen and that its retail price was $9,500. Appellant asked to have the genuineness of the watch verified. Before appellant and the detective left to have the watch checked appellant indicated he might replace the workings of the stolen watch with his own so that he would have the "right serial numbers" in case he and the detective were "pulled over." After verification of the watch's value by a jeweler, the two returned to appellant's office where appellant placed the watch in a cabinet drawer from which it was later seized by police acting under the search warrant. The pair next proceeded to appellant's bank where appellant withdrew $1,000 which he paid the detective as the price agreed for the watch.

### I.

As noted above it is appellant's principal contention that the state failed to make a

---

1. **570.080. Receiving stolen property.—**
   1. A person commits the crime of receiving stolen property if for the purpose of depriving the owner of *a lawful interest* therein, he *receives,* retains or disposes of *property of another* knowing that it has been stolen, or *believing that it has been stolen.*
   2. Evidence of the following is admissible in any criminal prosecution under this section to prove the requisite knowledge or belief of the alleged receiver:
      (1) That he was found *in possession or control* of other property stolen on separate occasions from two or more persons;
   (2) That he received other stolen property in another transaction within the year preceding the transaction charged;
   (3) That he acquired the stolen property for a consideration which he knew was far below its reasonable value.
   3. Receiving stolen property is a class A misdemeanor unless the property involved has a value of one hundred fifty dollars or more, or the person receiving the property is a dealer in goods of the type in question, in which cases receiving stolen property is a class C felony. (Emphasis added.)

submissible case because the evidence disclosed the wrist watch he received was *not stolen* property, and that such is an indispensable element of the offense under § 570.080.

■ Appellant misreads the statute. In so doing he ignores or down plays certain explicit language of the statute and would have us disregard the maxim of statutory construction that the legislative intent insofar as possible, is to be determined from the language of the statute itself, *State v. Swoboda,* 658 S.W.2d 24 (Mo. banc 1983); further that each portion of the statute must be given meaning unless it conflicts with ascertained legislative intent. *State v. Van Horn,* 625 S.W.2d 874 (Mo. 1981). When the legislature has altered an existing statute (and here there has been a radical departure from the preexisting statute) such change is deemed to have an intended effect, and the legislature will not be charged with having done a meaningless act. *State ex rel. Thompson-Stearns-Roger v. Schaffner,* 489 S.W.2d 207 (Mo.1973).

■ The controlling section, § 570.080, RSMo 1978, enacted as part of the new Criminal Code in 1977 to take effect in 1979, replaced the earlier "receiving stolen property" statute. The prior section § 560.270, RSMo 1969, (repealed 1979) specifically required a finding that the property at issue be stolen. The statute provided as follows:

> Every person who shall buy, or in any way receive, with intent to defraud, any property *that shall have been stolen* from another, knowing the same *to have been stolen,* shall, upon conviction, be punished in the same manner and to the same extent as for the stealing of the property so bought or received.

(Emphasis added.)

The new statute § 570.080 effected several profound changes. First, it discarded the language of prior statute requiring as an element of the crime that property received "shall have been stolen" and replaced that element so that the property

received need merely be "property of another." Section 570.080.1, note 1, supra.

Next § 570.080 altered the element of intent. No longer is the crime limited to a defendant who knows the property *"to have been stolen";* instead the necessary intent occurs if the defendant received *"property of another* knowing that it has been stolen, or *believing* that it has been stolen." Section 570.080.1 (emphasis added). Notwithstanding the express language of the statute, appellant would have us construe the section to mean that the crime occurs only if the property is stolen. He points to the use of the word "stolen" carried in the title to the statute. Appellant "has evidently confused the catch words prefixed by the compiler of our Session Acts, which are not parts of the title in a constitution [sic] sense, [citation omitted] with the title to the act found in Laws of Missouri," 1977, p. 658. *Ex parte Lockhart,* 171 S.W.2d 660, 663 (Mo. banc 1943). The title "receiving stolen property" is only an expression of the general scope of the section and does not control or alter the meaning of its specific provisions. *In re Tompkins' Estate,* 341 S.W.2d 866 (Mo. 1960).

Appellant also attaches significance to the consistent reference in subdivision 2 of the statute to the term "stolen property." Subdivision 2 of 570.080 adds a nonexclusive list of circumstantial evidence deemed admissible to demonstrate knowledge or belief. Most certainly such listing broadens and does not narrow or limit the scope of circumstances which may be found relevant and material to the issue. *See* § 570.080.2, note 1, supra. Subparagraphs (1) and (2) of subdivision 2 deal with and render admissible evidence of prior specific criminal activity which might otherwise be objectionable. Subparagraph (3) permits use of evidence that a defendant acquired property for a price far below the property's "reasonable value" to show knowledge or belief that the property was stolen. While it is not indicated that such evidence might raise a presumption of guilt, subdivision 2 and its subparagraphs satisfy a variety of evidentiary challenges that might be

raised to those particular items of circumstantial evidence. Despite the fact that each of the three referenced subparagraphs deals with situations involving "stolen property" and the admissibility of particular circumstantial evidence, the list, as stated above, is not intended to be exclusive. Nor do we interpret the three subparagraphs of subdivision 2 as voiding the clear express language of § 570.080.1 which delineates the act of receiving the "property of another ... believing that it has been stolen" as criminal.

Additionally the listing in subdivision 2 of certain circumstantial evidence declared to be admissible, in no way limits *direct proof* of the elements of the crimes proscribed in § 570.080.1. For as here, there was copious direct evidence of each element charged and we hold the admission of such direct evidence was proper. The fact that it lay beyond the items listed in subdivision 2 affected neither its admissibility nor the scope of proscribed acts in § 570.-080.1.

Our ruling today does not diminish the general scope of this statute and its continued application to property which *is* in fact stolen. However, it must be reiterated that the statute has been markedly broadened to include not only property that has in fact been stolen but also property "of another" that has *not* been stolen but which the accused "believes" to have been stolen.

■ The statute is designed as a means of curbing the activities of those who fence or deal in stolen property believing it to be stolen. The legislature has significantly increased the risk for those who choose this path to crime. Finally, it is clear the evidence supported the finding that appel-

lant intended to deprive the "owner" of his "lawful interest" in the property which appellant bought and received and the trial court's instruction incorporating these elements was not erroneous.[2] Appellant's contention is denied.

## II.

■ Appellant next attacks the trial court's admission of tape recorded conversation between appellant and the undercover detective as a violation of the general rule against admission of evidence of other crimes. The tape, played to the jury, included appellant's discussion of his decision to purchase the watch, the price, the modus operandi and precautions he insisted upon to protect himself from arrest. At one point in the tape, immediately prior to his decision to go to his bank and withdraw $1,000 to purchase the watch, appellant suggested that he might replace the works of that watch with another bearing valid serial numbers as a safeguard in case of apprehension. This because he was on probation from the jail term of a prior conviction.

"The rule against the admission of evidence of other crimes [citation omitted] is not applicable if it tends to show defendant's intent and if it is part of the res gestae." *State v. Huston*, 660 S.W.2d 718, 718–19 (Mo.App.1983). Here, appellant's statements[3] were relevant to show intent. His belief that the watch was stolen was an essential element of the crime. The precautionary measures he undertook to thwart possible discovery if "pulled over" was attributable to his awareness of the prior conviction and probationary status and the consequences that could result

---

2. Appellant challenged the main verdict directing instruction, which modified MAI–CR2d 24.-10. This challenge is not well taken. The instruction correctly embodied the necessary elements of the crime found in the statute and was stated in a fair, simple, brief and non-argumentative form. Rule 70.02(e). Thus, it meets the standard set by this Court for modification of approved instructions. *Streeter v. Hundley*, 580 S.W.2d 283 (Mo. banc 1979); *Means v. Sears, Roebuck & Co.*, 550 S.W.2d 780 (Mo. banc 1977).

3. The following statements were made by appellant: "I went to jail one time cause I didn't come in on a guy ... They put my ass away for three months, but I wouldn't tell them shit. They gave me a year and I did three months ... That's why I'm real careful about who I talk to ... [in a later conversation:] I'm on probation right now, I don't want to do nothing that's going to throw me back."

from his purchase of property he *believed* to be stolen.

Here as in *State v. Brown,* 584 S.W.2d 413 (Mo.App.1979), the reference in the tape to other crimes was inextricably woven with evidence of this crime. We find no error in the trial court's admission of the challenged evidence.

### III.

Between the time the detective learned that appellant was interested in purchasing a stolen watch and the time the watch to be sold to appellant was borrowed from the local jeweler, the detective obtained a search warrant. Because the watch had not yet been received by appellant he challenges the validity of the warrant and insists the evidence obtained should have been excluded. Section 542.271, RSMo Cum.Supp.1984.

The sequence of events leading to the issuance of the warrant and the ensuing search was as follows: About ten days prior to the offense appellant asked the detective posing as a dealer in stolen goods to obtain a Rolex Presidential watch. A week later, accompanied by a confidential informant, the same detective met with appellant's business partner and discussed stolen Rolex watches. Several days later the detective set up a meeting with appellant regarding the watch. At 10 a.m. on the date of the offense, the detective made his verified application for a search warrant to search the premises of appellant's business. In the affidavit and application the detective indicated that arrangements had been made to borrow the watch and that the warrant would not be executed until after the watch was actually sold and was on the premises described in the warrant. On this evidence the warrant was issued by the court. Later that morning the watch was borrowed and some time

after 3 p.m. appellant purchased the watch from the detective and placed it in a drawer of a cabinet behind his desk. At about 4:30 p.m. several officers arrived at appellant's place of business, executed the warrant, arrested appellant and seized the watch from the drawer pursuant to the warrant.

At trial, photographs of the watch came into evidence over appellant's objection. He challenges the validity of the warrant under § 542.271 and the admissibility of evidence seized thereunder as violative of the fourth and fourteenth amendments of the United States Constitution [4], and appellant's right to be free from unreasonable search and seizure.

Section 542.271, provides in relevant part:

1. A warrant may be issued to search for and seize, or photograph, copy or record any of the following:

\* \* \* \* \* \*

(2) Property which *has been stolen or acquired* in any other manner declared an offense by Chapters 569 and 570, RSMo.

(Emphasis added.)

Appellant argues the cited language dictates that a warrant cannot be issued for items that *will be* stolen or acquired, but only for items *already* stolen, or acquired.

Appellant, however does not address § 542.276, RSMo Cum.Supp.1984, which sets out criteria for warrants applied for under § 542.271, including seven conditions without which a warrant "shall be deemed invalid." They include issuance by a judge, the filing of a written and verified application, probable cause, issuance in the proper county, particularity of description, signature of the issuing judge and execution within the proper time. Section 542.276.10.

---

**4.** Appellant also, without citation of authority, makes the general statement that the search violated the Missouri Constitution and in so doing erroneously refers to article I, section 13 (ex post facto laws). The proper section, article I, section 15 (unreasonable search and seizure prohibited), has been interpreted to provide es-

sentially the same protections found in the fourth amendment to the United States Constitution. Our analysis of appellant's fourth amendment claim applies with equal force to his claim that the action of the state violated the Missouri Constitution.

There is no question that these criteria were met in the case at bar.

Any reasonable attack on the facial validity of the warrant under § 542.276 must address the issue of probable cause. The substantial body of evidence described above would permit the most critical observer to conclude that probable cause *was* shown and that there was no abuse of judicial discretion in this regard. Hence, no facial invalidity exists under § 542.276.

Appellant makes no serious contention that probable cause was not shown, but rather asserts that § 542.271 prescribes circumstances under which a search warrant "may be issued," that the statute does not permit any variations from those circumstances and should be interpreted as an exclusive catalog of instances in which a search warrant may issue. There are several problems with appellant's contention.

First, there are no cases construing the statute on the question posed here; it is a matter of first impression. Next, appellant's charge of invalidity also requires analysis in light of § 542.276.10(1)–(7) to determine the exclusivity of the grounds of invalidity listed there, none of which occur in the case at bar.

However, we are not required to finally resolve this question of statutory interpretation. Suffice it to say that the question is a close one the answer to which is not clearly apparent and upon which reasonable men might differ.[5] Reviewing the careful procedure employed in this case for the determination of probable cause, the application and affidavit for a search warrant, the presentation of pertinent facts to the appropriate court and the issuance of the warrant under the express condition that it not be executed until the property received by appellant arrived at the described premises, it becomes clear that the officer could reasonably believe he had fulfilled his responsibilities and could rely on the writ of the court.

■ Assuming arguendo the warrant might be found to be invalid under the statute, the fourth amendment exclusionary rule would not bar the prosecution's introduction of evidence seized by officers who in this case acted in reasonable reliance on a search warrant issued by a detached and neutral judge. *United States v. Leon,* ── U.S. ──, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). We do not find that the issuing judge abandoned his judicial role in a manner that would require invocation of the exclusionary rule; nor was the warrant so facially deficient as to preclude the same. Finally, the circumstances indicated that the officers were justified in their objective good faith reliance on this warrant. *Id.* 104 S.Ct. at 3422. "The officers in this case took every step that could reasonably be expected of them." *Massachusetts v. Sheppard,* ── U.S. ──, 104 S.Ct. 3424, 3429, 82 L.Ed.2d 737 (1984).

The trial court did not err in admitting the evidence seized by officers acting in good faith on what they reasonably believed was a valid search warrant.

### IV.

Next, appellant challenges the trial court's decision not to compel disclosure of a confidential informant who introduced the undercover detective to appellant's business partner. Appellant maintains that testimony of the informant would have been important in supporting an entrapment defense as well as defending against the crime charged.

■ In reviewing the trial court's decision we must weigh the cruciality and relevance of disclosure to the defense against the state's need for nondisclosure. *State v. Wandix,* 590 S.W.2d 82 (Mo. banc 1979). Disclosure is not required where testimony would be on "minor or collateral issues." *Id.* at 85.

■ The confidential informant in this case served only to introduce the undercov-

---

**5.** The issue, were we to address it here would involve not only construction of § 542.271 but also the general question of whether Missouri permits "[a]nticipatory probable cause and prospective search warrants." *See J. Hall, Search and Seizure* § 5.14, at 155–57 (1982).

er detective to appellant's business partner. The important evidence supporting conviction came during direct contact between the detective and appellant. Informant was not present during dealings between appellant and the detective leading to the terms of the "sale," the precautionary measures invoked by appellant, taking the watch to the jeweler for authentication, receipt of the watch and subsequent payment by appellant.

Additionally, the defense of entrapment requires a showing that a law enforcement officer or a person acting with him "induce[d] another person to engage in conduct when he was not ready or willing to engage in such conduct." Section 562.066.-2, RSMo 1978. Nothing is suggested to indicate the informant was privy to or had knowledge of any of the material facts summarized above. Having introduced the detective to a person other than the appellant (i.e. to appellant's business associate) the informant moved out of the picture and appellant fails in showing how his identity was important to the defense. The trial court did not err in refusing to order disclosure of his identity. *State v. Corley*, 639 S.W.2d 94 (Mo.App.1982).

### V.

Finally, appellant contends the delay between initial indictment and trial violated his right to a speedy trial then existing under statutory provision § 545.780, RSMo 1978. That section was substantially gutted and replaced by a section of the same number in 1984. Section 545.780, RSMo Cum.Supp.1984; *see* L.1984, p.——, S.B. No. 602, § 1, eff. June 7, 1984. The old section, which applies here "ha[d] no teeth. Dismissal of an indictment or information is purely a matter for the discretion of the trial judge." *State v. Collins*, 669 S.W.2d 933, 935 (Mo. banc 1984). Appellant here has failed to meet his "substantial burden" of showing an abuse of discretion. *Id.*

If we accept appellant's computation of a twenty-one month delay from the original arraignment (vis-a-vis later indictment and arraignment) to trial, he has not shown the entire delay "was occasioned by the state." Section 545.780.5. The record indicates that appellant secured new counsel following his June 4, 1983 reindictment and that the delays in part resulted from defense motions. One thirty-nine day delay resulting from a continuance on the trial judge's own motion is excludable under the former § 545.780.3(5)(a). Finally, we consider the lack of prejudice to the defendant by the delay. *State v. Lawson*, 630 S.W.2d 185 (Mo.App.1982). No prejudice to appellant can be gleaned from the record and none is asserted. We are not convinced from this record the trial court abused its discretion in refusing to order dismissal.

Judgment affirmed.

HIGGINS, C.J., BILLINGS, and BLACKMAR, JJ., and PRITCHARD, Special Judge, concur.

DONNELLY, J., dissents.

WELLIVER, J., dissents in separate opinion filed.

ROBERTSON, J., not sitting.

WELLIVER, Judge, dissenting.

I respectfully dissent.

I would have no trouble with this case had appellant been charged and convicted of *attempting to receive* stolen property under § 564.011, RSMo 1978. *See State v. Hunt*, 651 S.W.2d 587 (Mo.App.1983) (involving a sting operation). The legislature did abolish the legal impossibility defense for attempt offenses, and a person can be convicted of *attempting to receive* stolen property when the property is, in fact, not stolen. I do not believe that the legislature intended that the same facts could constitute an offense under both § 570.080 and § 564.011 nor do I believe that the legislature intended creating two different degrees of punishment for the same acts, depending solely upon which statute the prosecutor may choose to file.

I would either re-transfer this case as improvidently transferred, or in the alternative, adopt the opinion of the court of

appeals, which follows, as the opinion of the Court.

"Defendant, Jay S. Sweeney, appeals from his conviction in a jury trial of receiving stolen property and sentence of five years' imprisonment. Defendant raises seven points on appeal. We need only address his first point, which claims the State failed to make a submissible case because the property the defendant received was, in fact, not stolen. We reverse and order the defendant discharged.

"Defendant was charged as the result of a "reverse sting" operation conducted in May, 1982. A police officer, posing as a dealer in stolen goods, went to defendant's place of business for the purpose of selling a Rolex Presidential watch to him. The officer had borrowed the watch from a local jewelry store. The officer told the defendant that the watch had been stolen in Chicago. In May 11, 1982, the defendant paid the officer $1000 for the watch. An expert testified the watch had a retail list price of $9000 and a wholesale price of $5000.

"The dispositive issue is whether defendant can be guilty of the completed crime of receiving stolen property where the property in question was not stolen. The State argues the defendant is guilty of receiving stolen property relying on the language of § 570.080, RSMo (1978), which provides that a person commits the offense if he receives the property of another "knowing that it has been stolen, or *believing* that it has been stolen." (Emphasis added.) The contention is that since the defendant believed that the watch was stolen he is guilty of the completed crime. We disagree.

"The contention of the State is that § 570.080 does not require the property to be stolen, because the requirement is not as clearly stated as it was in the predecessor statute to § 570.080. Section 560.270, RSMo (1969) (repealed 1979) provided:

Every person who shall buy, or in any way receive, with intent to defraud, any property that shall have been stolen from another, knowing the same to have been stolen, shall, upon conviction, be punished. . . .

"That section was replaced by § 570.080 which provides:

A person commits the crime of receiving stolen property if for the purpose of depriving the owner of a lawful interest therein, he receives, retains or disposes of the property of another knowing that it has been stolen, or believing that it has been stolen.

"Court decisions since the new statute became effective have required that the property must in fact be stolen to support a conviction for the completed offense. *State v. Hurd*, 657 S.W.2d 337, 339 (Mo. App.1983); *State v. McCoy*, 647 S.W.2d 862, 864 (Mo.App.1983). The instruction for this offense also states the requirement that the property be stolen. MAI–CR2d No. 24.10.

"A reading of § 570.080 as a whole, including the title and comments therein, supports the defendant's argument that this element of the offense is still required. The title of the statute is *Receiving Stolen Property*. (Emphasis added.) Section 570.080.2(3) makes admissible evidence that a defendant "acquired the *stolen* property for a consideration which he knew was far below its reasonable value." (Emphasis added.)

"The State points out that § 570.080 was derived from Model Penal Code § 223.6. *State v. Sours*, 633 S.W.2d 255, 258 (Mo. App.1982). It then cites to the Comment in the Model Penal Code which states: "There is no requirement in § 223.6 that the property in fact have been stolen; it is sufficient if the actor believes that the property probably has been stolen." [1] Model Penal Code and Commentaries, Official Draft and Revised Comments, Vol. II, at 239 (1980).

---

1. It might be noted that the Comments to the Model Penal Code add that "[n]ormally, such questions, must be analyzed in terms of whether the purported receiver can then be convicted of attempt, and the issue turns on the attitude of the jurisdiction toward 'impossibility' as a defense to attempt."

Section 223.6, in pertinent part, provides that a person is guilty of the offense if he receives property of another "knowing that it has been stolen or believing that it has probably been stolen." The State argues that since this language is similar to that of § 570.080, the Missouri statute does not require the property be stolen.

"The provision of the Missouri statute that the State relies on was enacted to relieve the State of proving that a defendant knew in fact that the property was stolen. Under the new statute, it is sufficient for a conviction that the State prove, directly or circumstantially, that the defendant believed the stolen property was stolen. Further evidence that this change in language is directed at the mental element of the crime is found in § 570.080.-2(1)(2)(3), which permits circumstantial proof of the knowledge or belief. These provisions were not part of the predecessor statute, § 570.270. These provisions indicate an attempt to make it easier to prove the mental element.

"The Comment to § 570.080 states:

The state can make its case by proving that the defendant knew the property had been stolen or believed it probably had been stolen. The second is a lesser burden, but is justified because it corresponds more closely to reality. The fence "knows" the property was stolen in the sense that he has good reason to believe it was stolen. By putting the standard in terms of belief as well as knowledge, the section avoids the problem of a juror putting too restrictive a meaning to "know."

§ 570.080, V.A.M.S. (1979), Comment at 701. The Comment says nothing about eliminating the requirement the property be stolen.

"The leading Missouri case on point is *State v. Hunt*, 651 S.W.2d 587 (Mo.App. 1983). In *Hunt*, the defendant was charged with and convicted of attempting to receive stolen property, to-wit, television sets. The television sets were in fact not stolen. Citing § 564.011, RSMo (1978), the court rejected the defense of legal impossi-

bility in attempted crimes, and stated: "If the condition of the televisions had been as defendant supposed, the crime would have been completed." *Hunt*, 651 S.W.2d at 589. The obvious implication is since the television sets were not stolen, the crime could not have been completed. *See also State v. Sample*, 673 S.W.2d 61 (Mo.App. 1984).

"Since § 570.080 requires the property be stolen, it would be legally impossible for the defendant in this case to be guilty of the completed crime. Missouri has eliminated legal (and factual) impossibility as a defense to *attempt* crimes, § 564.011.2, RSMo (1978), but there is no similar statute eliminating legal impossibility as a defense to completed crimes. One reason § 564.-011.2 was enacted was to prevent exoneration of a defendant where attempt liability should be imposed. § 564.011, V.A.M.S. (1979), Comment at 388.

"We therefore hold that a person who receives property that is not stolen but which he believes to be stolen may be guilty of an attempted crime, but cannot be convicted of the completed crime of receiving stolen property. In view of our holding, we need not address the other points raised by defendant on appeal."