Dear Senator Goode:
This opinion is in response to your questions which can be summarized as follows:
 1. If the Metropolitan Zoological Park and Museum District levies less than the maximum authorized four cent tax rate for the Missouri History Museum Subdistrict in 1988, how shall the subdistrict's 1989 tax rate ceiling, resulting from tax rate revision after reassessment, be calculated?
 2. If the Metropolitan Zoological Park and Museum District levies a Missouri History Museum tax rate in 1989 of less than its 1989 tax rate ceiling, may it raise the levy up to the tax rate ceiling in 1990 without voter approval?
You have provided the following information relating to the questions you posed:
 The Metropolitan Zoological Park and Museum District ("Zoo-Museum District") is empowered to levy voter-approved taxes on taxable property in St. Louis City and St. Louis County for the support of cultural institution subdistricts. The subdistricts, under Zoo-Museum District jurisdiction, operate or contract with the St. Louis Zoo, Art Museum, Missouri Botanical Garden, Museum of Science and Natural History and Missouri History Museum ("History Museum"). Pursuant to enabling legislation in [Section 184.353.3, RSMo 1986], the voters of St. Louis City and St. Louis County in November, 1987 established the History Museum as a new subdistrict of the Zoo-Museum [District] and authorized a tax rate for the new subdistrict not to exceed four cents per $100 of assessed valuation of taxable property. During the campaign for the establishment of a History Museum Subdistrict, officials of the Missouri Historical Society indicated that they initially would seek only part of the maximum authorized tax rate. This remains their intention and purpose.
Sections 184.350 through 184.384, RSMo 1986, relate to the Zoo-Museum District to which you refer in your questions. Subsection 3 of Section 184.353 specifically refers to the History Museum tax rate which is the subject of your questions. Such subsection provides:
 3. (1) The board of directors of any metropolitan zoological park and museum district, as established according to the provisions of sections 184.350 to 184.384, on behalf of the district may request the election officials of any city and county containing all or part of such district to submit the following described proposition to the qualified voters of such district at any general, primary or special election. . . .
 (2) Such proposition shall be submitted to the voters in substantially the following form at such election:
 Shall the Metropolitan Zoological Park and Museum District of the City of ________ ________________________ and the County of _________________________ be authorized to provide for a Missouri History Museum Subdistrict and be authorized to provide the Missouri History Museum Subdistrict with a tax rate not in excess of four cents on each $100 of assessed valuation of taxable property within the district?
YES [ ] NO [ ]
 (3) In the event that a majority of all the voters voting on such proposition in such city and a majority of voters voting on such proposition in such county cast "YES" votes on the proposition, then the Missouri history museum subdistrict shall be deemed established and the tax rate, as established by the board for such subdistrict, shall be deemed in full force and effect as of the first day of the second month following the election. . . .
The answers to your questions involve interpreting Chapter 137, RSMo, relating to the assessment and levy of property taxes and involve interpreting Article X, Section 22(a) of the Missouri Constitution, which section was adopted as part of what is commonly referred to as the Hancock Amendment.
Section 137.115.1(2), RSMo Supp. 1987, provides in pertinent part:
 (2) Whenever changes in assessed valuation resulting from implementation of an assessment and equalization maintenance plan within the county are entered in the assessor's books, the county clerk in all counties and the assessor of St. Louis City shall notify each political subdivision . . . Each political subdivision . . . shall immediately revise the rates of levy for each purpose for which taxes are levied to the extent necessary to produce from all taxable property, exclusive of new construction and improvement, substantially the same amount of tax revenue as was produced in the previous year; . . .
(Emphasis added.)
Section 137.115.1(2) further provides in pertinent part:
 The provisions for setting and revising rates of levy under this section shall prevail in event of conflict with provisions of section 137.073 resulting from implementing an assessment and equalization maintenance plan . . . and the revised rate determined under this section shall become the tax rate ceiling as defined under section 137.073 and such rate may be increased only in the manner provided by law and the constitution. . . .
By referencing Section 137.073 in Section 137.115, the legislature manifested its intent that Section 137.115 be read in conjunction with Section 137.073 to the extent that Section137.073 does not conflict with Section 137.115. This is significant because the definitions for both "tax revenue" and "tax rate ceiling" are found in Section 137.073.
Section 137.073.1(4), RSMo 1986, defining the term "tax rate ceiling" provides:
 (4) "Tax rate ceiling", a tax rate as revised or reduced by the taxing authority to comply with the provisions of this section or when a court has determined the tax rate reduction. This is the maximum tax rate that may be levied in the year of tax rate revision or reduction and in subsequent years, unless a higher tax rate ceiling is approved by voters of the political subdivision as provided in this section.
Section 137.073.1(5), RSMo 1986, defining the term "tax revenue", provides in pertinent part:
 (5) "Tax revenue", when referring to the previous year, means the actual receipts from ad valorem levies on all classes of property, including state assessed property, in the immediately preceding fiscal year of the political subdivision, plus an allowance for taxes billed but not collected in the fiscal year and plus an additional allowance for the revenue which would have been collected from property which was annexed by such political subdivision but which was not previously used in determining tax revenue under this section. . . . For purposes of political subdivisions which were authorized to levy a tax in the year prior to general reassessment but which did not levy such tax, the term "tax revenue", as used in relation to the reduction or revision of tax levies mandated by law for the year of general reassessment or a subsequent year, shall mean that amount which such political subdivisions would have received in their fiscal year which included or ended on December thirty-first of the year prior to general reassessment had they levied the tax they were authorized to levy in that same fiscal year.
(Emphasis added.)
In 1986, the legislature amended the above definition of tax revenue to add that provision which is highlighted above by underlining. When the legislature has altered an existing statute, such change is deemed to have an intended effect, and the legislature will not be charged with doing a meaningless act. State v. Sweeney, 701 S.W.2d 420 (Mo. banc 1985). In light of the amendment the phrase "tax revenue as was produced in the previous year," as used in both Sections 137.073 and137.115, means the amount which would have been received in the previous year had the maximum authorized tax been levied. The legislature's amendment of the definition of "tax revenue" evidences its intent to provide political subdivisions with the flexibility to decide not to levy the maximum authorized tax without adversely affecting how the tax rate ceiling is calculated.
This conclusion is consistent with the language of the Hancock Amendment which provides for a tax rate reduction under certain circumstances. In pertinent part, that language is as follows:
[T]he maximum authorized current levy . . . shall be reduced to yield the same gross revenue from existing property . . . as could have been collected at the existing authorized levy on the prior assessed value.
(Emphasis added.) Missouri Constitution, Article X, Section 22(a).
The legislature has evidenced its intent that the tax rate ceiling for a particular subdivision be computed based on the maximum authorized tax and not the actual tax imposed.
With respect to your second question, Section 137.073.6(3) provides:
 (3) The governing body of any political subdivision except a school district may levy a tax rate lower than its tax rate ceiling and may increase that lowered tax rate to a level not exceeding the tax rate ceiling without voter approval.
Assuming the tax rate ceiling does not change between 1989 and 1990, if the property tax rate levied in 1989 is less than the 1989 tax rate ceiling, the tax rate may be raised in 1990 to the tax rate ceiling without voter approval.
Conclusion
It is the opinion of this office that (1) the property tax rate ceiling in 1989 for the Missouri History Museum Subdistrict of the Metropolitan Zoological Park and Museum District is based on the maximum authorized property tax rate in 1988 rather than the property tax rate actually levied in 1988, and (2) if the property tax rate levied for such subdistrict in 1989 is less than the 1989 tax rate ceiling, assuming no changes in its tax rate ceiling between 1989 and 1990, the tax rate may be raised in 1990 to the tax rate ceiling without voter approval.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General