In re Search Warrant of Property in a 1969 **PLYMOUTH ROADRUNNER, BLACK 2–DOOR SERIAL NUMBER RM 23J9G-123520, Automobile at the Missouri State Highway Patrol Zone Office in Sikeston, Scott County, Missouri.**

George GARNER, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 54751.

Supreme Court of Missouri, Division No. 1.

May 11, 1970.

Edwards & Robison, by James R. Robison, Sikeston, for movant-appellant.

John C. Danforth, Atty. Gen., John C. Craft, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Commissioner.

Appeal by George Garner from judgment in proceedings under Criminal Rule 33.03, V.A.M.R., overruling motion to quash search warrant, to suppress as evidence property seized thereunder, and to have returned to him as owner the property so seized. The motion presented federal and state constitutional issues which were renewed in the motion for new trial and preserved in the brief on appeal. Among other things, it was alleged that the complaint and search warrant violated search and seizure provisions of Article I, Section 15, Missouri Constitution, Amendments IV and XIV, United States Constitution, and Criminal Rule 33.01(b), V.A.M.R., in that the articles sought to be searched for and seized were not described with sufficient detail and particularity to enable the person executing the warrant to ascertain and identify the same; and that the warrant was issued without a sufficient showing of probable cause. See In Re Search Warrant of Property, at Apartment No. 7, South Webb St., Webb City, Casper County, Mo., 369 S.W.2d 155, 156[1]; Search Warrant of Property at 5 W. 12th St. v. Marcus, Mo., 334 S.W.2d 119, 121[1].

On October 18, 1968, Troopers Robert Eddleman and J. M. Crismon arrested Billy Sullivan, operator of the captioned 1969 Plymouth, for speeding near Sikeston in Scott County, Missouri. When he was unable to produce an operator's license, they also arrested George Garner, passenger in and owner of the Plymouth, for permitting an unauthorized operator to drive his automobile. Upon recognizing George Garner, Trooper Eddleman also arrested him for investigation of an automobile bombing. Trooper Crismon drove the Plymouth to the patrol garage in Sikeston, locked the ignition, and saw the garage locked.

On October 19, 1968, Trooper Eddleman made complaint before the circuit judge, upon information and belief that certain "personal property, to-wit: Burglarly tools, weapons (including hand guns), and stereo tapes or players, the exact number and/or description of which are unknown * * * of the goods and chattels of a person or persons unknown has been heretofore unlawfully stolen, or are unlawfully located in a certain * * * 1969 Plymouth 'Roadrunner,' etc., * * *." Attached to his complaint was his affidavit to the effect that he was a member of the Missouri State Highway Patrol on October 18, 1968, when he observed the speeding Plymouth; that the operator of the Plymouth (Sullivan) was unable to produce an operator's permit and was arrested; that the operator stated a passenger, George Garner, was the owner of the Plymouth; that "the interior of the car was searched, after the occupants * * * had been personally serached. I knew of Garner as a convicted felon who had served time, and was known as a professional gambler.

"The interior of the car revelaed one .38 Smith & Wesson relvolver * * * under a raincoat on the left rear floorboard; one .38 Colt Relvolver * * *. Both guns were fully loaded.

"The Colt was found under the right front seat. The automobile was equipped with two radio receivers mounted under the right front dashboard. Two walkie-talkies were found, one under each front seat. There was a pad on the top of the dashboard with notations of the radio frequencies for Missouri State Highway Patrol, * * * Missouri State Car to Car, Illinois Highway Patrol * * * and car to car, and Cairo, Illinois City Police.

"There was a pair of men's gloves on floorboard, left rear, a pair lying on the front seat, and Mitchell had a pair in the pociket of his jacket.

"There were two suitcases on the left floorboard, rear, full of stereo tapes; the automobile was not equipped with a stereo player.

"Based on the above, and the fact that many stereo tapes in the vicinity of Sikeston Missouri have recently been reported stolen, this affiant does verily believe that the trunk of said * * * Plymouth * * * does contain burglar tools, weapons, and stoled items, the exact nature and amount of such being at this time unknown to affiant."

Upon this complaint and affidavit a search warrant was issued authorizing a search of the Plymouth for seizure of "described personal property, to-wit: Burglarly tools, weapons (including hand guns) and stereo tapes or players of the goods and chattels of a person or persons unknown (which) has been unlawfully stolen, or is unlawfully located and that said property is being kept or held in this county and state at and in" said Plymouth.

A search of the trunk of the Plymouth was conducted pursuant to the warrant October 19, 1968, with Troopers Crismon and Eddleman, Sheriff John Dennis, and Deputy J. E. Michael present. A return and inventory were filed in the name of Sheriff Dennis by Deputy Michael. The inventory contained 67 items, 45 of which were taken from the trunk of the car and 22 of which were taken from the passenger compartment. Items in the trunk included a canvas bag containing four crowbars, bolt cut-

ter, four various sized screwdrivers, sledgehammer, Stilson wrench, vise grip pliers, and three punches; .44 Magnum caliber carbine, shotgun with sawed barrels, shells, shovel, axe, wire, toolbox, duffel bags, rugs, gloves, funnel, window washer solution, jack, lug wrench, and spare tire. Items in the passenger compartment included shells, flashing red light, two cases each containing 13 stereo tapes, two walkie-talkies, notation of police radio frequencies, knife, sealing tape, gloves, pliers, pistol case, sofa cushion, raincoat and case, tire inflater, case containing masks, checkbooks, loan payment books, Band-Aids, change, handcuffs, knife, and battery; flashlight, corset, and spotlight.

The motion which gave rise to this proceeding was filed November 7, 1968, and it was heard December 13, 1968, at which time evidence was taken, all of which was presented by movant.

Trooper Crismon's testimony showed the arrest of Sullivan for speeding and of movant for permitting an unlicensed person to operate his automobile. He also established his custody of the Plymouth from the time it was stopped until the search in which he participated the following day.

Trooper Eddleman testified to his participation in the arrests of Sullivan and movant. He "vaguely" recognized movant as a man pointed out to him in Charleston, Missouri, by another trooper several months previously, and he arrested him also for investigation for bombing an automobile in Charleston. He had no suspicion of his own; Trooper Rupert had told him Garner was wanted for investigation of bombing. Trooper Eddleman was unable to identify any stereo tapes as stolen tapes, and his only reason for believing the stereo tapes seen in the Plymouth to have been stolen was "I did not see a stereo tape player in the car." None of the seized tapes had

been reported stolen. He was unable to give any further information as to why he had wished to search for burglary tools, weapons, and stolen items, nor could he state any prior knowledge of specific conviction. He had been told by Trooper Rupert that Garner was a professional gambler.

Lawrence Glover, an automobile salesman, sold the 1969 Plymouth to movant October 7, 1968. It was equipped with a factory-installed stereo tape player. He identified the invoice showing such factory installation and he had seen the tape player in the Plymouth subsequent to the date of sale. A mechanic would have to tear apart the whole dash assembly in order to remove a factory-installed player.

Josephine Klipfel, clerk of the Scott County Magistrate Court, identified records showing that on October 21, 1968, George Garner was charged with "permitting an unauthorized person to drive"; wrongful possession of vehicle license plate; "carrying a concealed weapon"; "possession of bomb or bombshell"; and "possession of burglary tools." All charges except that of carrying concealed weapon [1] were dismissed in the magistrate court prior to the hearing on this motion.

The state adduced no evidence, and there was no evidence or claim of ownership of any of the property found in movant's automobile to controvert movant's claim of ownership and his possession of such property.

The first question is whether the search warrant was sufficient to authorize the seizure of the items taken from movant's Plymouth automobile. In Re Search Warrant of Property, etc., supra, 369 S.W.2d 1. c. 158[9]. Appellant contends that "even if there had been sufficient probable cause to issue the warrant, it was defective as issued for the reason that the complaint, af-

1. Presumably this charge concerned the weapons observed inside the Plymouth at the time of arrest as opposed to any "weapons" sought from the trunk by warrant because such charge can relate only to weapons concealed on the person or within reach. See Section 564.610, V.A.M.S.

fidavit, and warrant all failed to adequately describe the property to be searched for; but merely authorized the officers to search for and seize burglary tools, weapons and stereo tapes or players without any further description as required by the Constitution and Supreme Court Rule."

Amendment IV of the United States Constitution, made applicable to the states under Amendment XIV by Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, provides that the right of the people to be secure against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, "particularly describing the place to be searched, and the persons or things to be seized." Similarly, Article I, Section 15, of the Missouri Constitution provides the same security and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the person or thing to be seized "as nearly as may be." These principles have been reiterated in the statutes, Sections 542.260 to 542.440, V.A.M.S., and, in further amplification, Rule 33.01(b) supra, requires that the complaint and the warrant issued thereon must contain a description of the personal property to be searched for and seized "in sufficient detail and particularity to enable the officer serving the warrant to readily ascertain and identify the same." Search Warrant of Property at 5 W. 12th St. v. Marcus, supra, 334 S.W.2d 1. c. 125, although reversed on other grounds in Marcus v. Property Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127, cited 47 Am. Jur. 524, Searches and Seizures, § 37, as explanatory of the requirements of the constitutions and Rule 33.01: "The requirement of the constitutional provisions that search warrants shall particularly describe the thing to be seized necessitates a description of the property to be seized with such certainty as to identify it, and prevents the seizure of one thing under a warrant describing another. The description must be so particular that the officer

charged with the execution of the warrant will be left with no discretion respecting the property to be taken. Thus, a description as 'goods, wares and merchandise,' without any specification of their character, quality, number, or weight, or any other circumstances tending to distinguish them, is not sufficiently particular or definite.

"A description of the property to be seized need not be technically accurate nor necessarily precise; and its nature will necessarily vary according to whether the identity of the property, or its character, is the matter of concern." See also 79 C.J.S. Searches and Seizures § 81c, pp. 895–896.

■ The description of the personal property to be searched for in the warrant in this case did not meet these requirements. It purported to authorize the search for and seizure of "burglar*ly* tools, weapons (including hand guns) and stereo tapes or players," and this general description was further obscured by the language "of the goods and chattels of a person or persons unknown * * * unlawfully stolen, or * * * unlawfully located and * * * kept or held" in a certain Plymouth. Among the missing elements of the required detailed description are such items as the names of any persons whose tools, weapons, tapes or players had been stolen; the types or names of any of such items; the time, place, and nature of any unlawful use, possession or taking of such items, and other circumstances which would identify the property searched for as to preclude the possibility of seizing any other.

■ "Burglary tools" are not of themselves unlawful instruments but are simply hand tools designed for lawful use until the intent to use or possess them unlawfully appears, and one man's tools resemble another's; the same may be said of "weapons (including hand guns)" in that they have both lawful and unlawful uses, and one man's guns appear the same as another's until unlawful intent appears; and stereo tapes and players may be purchased

in the open market and owned by anyone and, until their possession is alleged and identified as unlawful, one man's tapes and players appear the same as another's.

These observations can be demonstrated by case law. In Re Search Warrant, etc., supra, held the description in a search warrant insufficient which authorized the executing officer to search for and seize the articles named in Section 542.380(2), V.A.M.S., without further directions limiting an exercise of discretion with respect to what constituted an obscene article. In this case the officer was not limited in determining whether the property to be searched for and seized was the property of movant or of any other person or whether it was lawfully possessed or for an unlawful use. In People v. Mayen, 188 Cal. 237, 205 P. 435, a search warrant which authorized the seizure of property as "certain personal property used as a means of committing a public offense, to wit, attempted grand larceny" was held bad for want of sufficient description of the property to be seized. See also Stern v. Superior Court, 76 Cal. App.2d 772, 174 P.2d 34, 40[8]; Aday v. Superior Court, 55 Cal.2d 789, 13 Cal.Rptr. 415, 362 P.2d 47, 51[1]. Allen v. Holbrook, 103 Utah 319, 135 P.2d 242, recognized that general descriptions were sufficient only in those cases where the goods sought are contraband or of such character or nature as to be illicit under the circumstances, and the court held bad for want of sufficient description a search warrant for "milk bottles stamped with various names, marks, brands or devices * * * owned by the persons whose registered trade marks are stamped" because the sheriff could not possibly know what bottles to seize.

With particular respect to "stereo tapes or players," People v. Prall, 314 Ill. 518, 145 N.E. 610, is in point. The warrant there described the property as "certain automobile tires and tubes" and directed the sheriff to search for "said stolen goods and chattels." The warrant was held defective for want of sufficient description

because "certain automobile tires and tubes" describes property "that may be found in great quantities and which is the subject of lawful trade in every city in the United States. There is no effort to identify these tires and tubes by name, number, color, size, or material. * * * There was nothing in the warrant which gave the sheriff information by which he could select certain property within the description * * * and refuse to take other property equally well described in the warrant." 145 N.E. 1. c. 612[5].

With particular respect to "burglary tools," State v. Young, Mo., 425 S.W.2d 177, is in point. The seizure there was from an automobile of property similar to that taken from movant, i. e., screwdrivers, electric drill and bits, tire tool, pointed bar, clothing, oil, pliers, wrenches, wire, sledgehammer, ball-peen hammer, electric cord, chisel, flashlight, gloves, etc. The automobile had been stopped for alleged failure to display license plate in a proper place, and after the seizure the defendant was prosecuted for unlawful possession of burglar tools. In reversing, the court held that "while such tools can be and are * * * used by burglars, to be criminal the tools have to be breaking tools and the possession of such tools would have to be accompanied by a burglarious intent, * * *. The evidence fails to show any outward indication of such intent at the time Officer Boyd observed these tools on the floor of the car." 425 S.W.2d 1. c. 181[2]. See also State v. Lorts, Mo., 269 S.W.2d 88, 91[2–4]; State v. Crouch, Mo., 353 S.W.2d 597, 601[12]. By analogy, the same reasoning applies to the guns in issue because nothing in their description in the warrant showed their possession to be unlawful and possession of guns is not in and of itself unlawful.

■ Nor can the discovery of tools, guns, and stereo tapes in the course of the search relieve of the necessity of a detailed description in the search warrant because "it was good or bad when issued and its character was not changed by what its exe-

cution disclosed." In Re Search Warrant of Property, etc., supra, 369 S.W.2d 1. c. 158[6].

Respondent cites State v. Cook, 322 Mo. 1203, 18 S.W.2d 58, to show that "intoxicating liquors" was a sufficient description to advise the executing officer what to search for and seize; however, that case arose in 1929 when intoxicating liquor, irrespective of descriptive detail, was unlawfully possessed and, if possessed, was subject to seizure. Respondent also cites Porter v. United States, 9 Cir., 335 F.2d 602, holding that seizure of a sawed-off shotgun was proper, but in that case defendant's possession of same was charged and shown to be in violation of 26 U.S.Code §§ 5814, 5841, none of which was made to appear from the warrant in this case.

Since the warrant was defective for failure to properly describe the property to be searched for and seized, none of the property seized thereunder could be used as evidence against movant and, accordingly, the motion to quash and suppress should have been sustained. Mapp v. Ohio, supra; State v. Young, supra; State v. Spica, Mo., 389 S.W.2d 35, 43[13].

Further, since this question is dispositive of the appeal, it is not necessary to discuss any issue of probable cause.[2]

■ Respondent argues that even if the warrant is invalid, the property seized thereunder should not be returned to movant without further hearing because "it is, or may be, contraband." The only authorities for this position are Porter v. United States, supra, and Section 560.115, V.A.M.S. Porter v. United States has already been distinguished with respect to movant's possession of the guns in this case, and Section 560.115 makes unlawful the possession of tools of the nature found in this search only when possessed with a showing

of burglarious intent. The warrant in this case makes no suggestion whatever of such an intent. State v. Young, supra, 425 S.W.2d 1. c. 182[8–11].

Accordingly, the judgment is reversed and the cause remanded with directions to enter a judgment sustaining the motion to quash the search warrant, suppressing as evidence the property seized thereunder, and returning to movant the property withheld from him.

HOUSER, C., concurs in result on return of property.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

SEILER, P. J., and HOLMAN, J., concur.

McMILLIAN, Special Judge, concurs in result and concurs in and adopts concurring opinion of HOUSER, C.

BARDGETT, J., not participating because not a member of the Court when the case was submitted.

HOUSER, Commissioner (concurring in result).

This is a proceeding under Criminal Rule 33.03, which authorizes a person against whom a criminal proceeding is pending (growing out of the subject matter of a search and seizure) and who claims to be aggrieved by an unlawful search and seizure to file a motion *"to suppress the use in evidence"* of the articles taken by the search and seizure. Paragraph (b) of

2. By contrast, there was no question of sufficiency of description in the warrant of the property to be searched for and seized in State v. Wing, Mo., 455 S.W.2d 457, also of this date, and the dispositive question was probable cause for issuance of the warrant.

the rule provides that if the property is not such that its possession is a criminal offense the motion may pray for the return of the property.

A number of charges were pending against defendant when this motion was filed, including a charge of possession of burglary tools. It was important to defendant that the articles seized in this search be excluded from his trial on the latter charge. The principal object of his motion was *to suppress the use in evidence* of these articles. Subsequently, however, all charges against defendant were dismissed except a charge of carrying a concealed weapon. The latter charge had no relation to the articles seized in this search, because a charge of carrying a concealed weapon relates *only* to a weapon either upon defendant's person or in such a place in an automobile that the defendant is able to reach the gun, State v. Bordeaux, Mo.Sup., 337 S.W.2d 47, and none of the articles seized under the warrant fit that description. Upon dismissal of the criminal charges the articles taken by the search and seizure under the warrant issued were no longer related or germane to any pending criminal charge against defendant and therefore the question whether the use of the articles *in evidence in a criminal trial* should be suppressed became moot. The court, however, properly retained jurisdiction of the motion for the purpose of passing upon defendant's prayer for the return of his property. Since it affirmatively appears that the property was not contraband; that defendant's ownership of the property is not controverted, and since no other reason appears for withholding his property, the court should have ordered its return to defendant.

I therefore concur in holding that the judgment be reversed and the cause remanded with direction to sustain the prayer of the motion for return to movant of the property withheld from him. I express no views upon the sufficiency of the warrant to properly describe the property to be searched for and seized, or the question of probable cause, for the reason that under the circumstances of this case I do not consider it necessary to pass upon those questions.