STATE of Missouri, Respondent,

v.

Richard Duane BROWN, Appellant.

No. 67355.

Supreme Court of Missouri,
En Banc.

April 15, 1986.

Patrick Deaton, Elise Branyan, Asst. Public Defenders, Springfield, for appellant.

William L. Webster, Atty. Gen., Carrie Francke, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Defendant, convicted by jury of burglary in the second degree, § 569.170,[1] and stealing property valued at $150 or more, § 570.030, was sentenced as a persistent offender to consecutive ten year terms of imprisonment for each offense, with those terms to run consecutively to a sentence imposed in another case. The Court of Appeals, Southern District, reversed the judgment but ordered the cause transferred to this Court that we might reexamine the existing law regarding the Missouri exclusionary rule as applied in *State v. Hunt*, 280 S.W.2d 37 (Mo.1955). Mo.Const. art. V, § 10. We draw freely from the opinion of the court of appeals, Crow, J., without quotation marks.

## I.

Sometime between 5:00 p.m., August 20, 1981, and 8:10 the following morning a hardware store in Weaubleau was burglarized and merchandise approximating $3,100 was stolen. Robert Lightle, store manager, inventoried the store and prepared a list (admitted in evidence as state's exhibit 1) of items believed to have been stolen, and gave the list to William Kennedy, the Hickory County sheriff. The ten-page list described more than 200 different items and in many instances several units of a single type were missing. Among those reported were saws, wrenches, and "1 Bench grinder (Dark gray)."

On the evening of November 5, 1981, Sheriff Kennedy with Sheriff Hill of Dallas County and Sheriff Simmons of Polk County went to defendant's home in Polk County. Defendant came to the door and invited them in. Almost immediately after entering the house Sheriff Simmons placed

---

1. All statutory references are to RSMo 1978 unless otherwise indicated.

defendant under arrest "for investigation" regarding theft of some motor oil (unrelated to the Weaubleau burglary), and read him the Miranda [2] warning.

Kennedy, who at the time had no notion that defendant might have been involved in the Weableau burglary, asked defendant about the motor oil. Denying any connection with the oil theft, defendant stated he only had five quarts of oil in the house and opened a padlocked door of "a little side room," showing Kennedy the five quarts of oil. It was then that Kennedy observed a "large quantity of tools and accessories," including a "gray half-horse grinder," chain saws, and all kinds of wrenches. The tools appeared to be new tools and "lots and lots of tools" were "still in the bubble packages." Kennedy asked where he got the tools and defendant told Kennedy it was none of his business and told him to leave. The sheriffs departed.[3]

Suspecting that defendant was connected with the Weaubleau burglary because of the large number of new tools and especially the gray bench grinder, Kennedy prepared a complaint for a search warrant which he presented to the circuit judge of Polk County who issued the warrant about 3:10 a.m., November 6, authorizing the search of defendant's dwelling house and outbuildings and the seizure of any of the items listed on the eight "exhibits" attached to the warrant. According to the copy of the warrant furnished us, the "exhibits" included several "offense reports" prepared by the Sheriff's Department of Hickory County and nine of the ten-page Lightle list.

Kennedy notified Otis Ray Gipson, manager of the MFA Exchange in Weaubleau, the owner of the burglarized store, to meet him at defendant's home, where Kennedy had Gipson "identify as many items as we could belonging to the MFA Hardware there in Weaubleau." Included among the items seized were a Homelite XL 12 chain saw, the gray bench grinder and a chain saw rewind spring and a sprocket, admitted at trial as state's exhibits 2, 3, 4 and 5, respectively.

Later that day Lightle examined the seized items at Kennedy's request, and prepared a list, admitted at trial as state's exhibit 6, of those he identified as having been taken from the store. Exhibits 2 through 5 were among the items identified and in a number of instances, there were several units of the same type. Lightle admitted at trial that he had claimed many items on exhibit 6 because they were the same brand and type as those stolen but could "positively identify" "probably half" of the items he received from Kennedy.[4] Defendant contends the trial court erred in denying his motion to suppress and in admitting state's exhibits 2 through 5 because the search warrant failed to identify the property to be seized with sufficient particularity and was issued without probable cause.

## II.

■ We first consider defendant's assertion of facial invalidity based on the assertion that the warrant failed to identify the property to be seized with sufficient particularity. U.S.Const. amend. IV; Mo.Const.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. The record reveals nothing further concerning defendant's arrest "for investigation" of the motor oil theft.

4. At trial, Lightle identified exhibits 2 through 5 as items stolen from the store. He identified exhibit 2, the Homelite XL 12 chain saw, by a piece of red tape across the back used as a price tag, and estimated the wholesale value of the saw at $279. He identified exhibit 3, the gray bench grinder, by the cost code he had written on the warranty sticker and estimated the value of the grinder at $55. Lightle explained that it was the only grinder in the store and had been there about 1½ years at the time of the burglary. He identified exhibit 4, a rewind spring for a chain saw, and exhibit 5, a sprocket for a chain saw, both exhibits still in their cartons, by his handwritten cost codes on the cartons. While exhibits 2, 3 and 5 were listed on exhibit 1, the original list of missing items prepared by Lightle, exhibit 4 was not.

art. I, § 15; § 542.276.[5] The descriptions must be sufficient to prevent a general search and to ensure that the property taken will not be left to the caprice of the officer conducting the search. *State v. Pennington*, 642 S.W.2d 646, 648 (Mo. 1982). *See also Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927); *In re 1969 Plymouth Roadrunner, Black 2-Door*, 455 S.W.2d 466, 470 (Mo.1970); *State v. Johnson*, 677 S.W.2d 330, 331 (Mo.App.1984).

 In *Pennington*, 642 S.W.2d at 648, we found descriptions of the "tan knee-high trench coat," "briefcase," and "money in the amount of $6,000.00" to be sufficiently particular. In the instant case, state's exhibits 2, 3 and 5 were described adequately in the attached list incorporated in the search warrant to pass constitutional muster. Exhibit 2 was described as "1 XL–12 Homelite," exhibit 3 as "1 Bench grinder (Dark gray)," and exhibit 5 as "3 saw sprocket." These descriptions were sufficient to ensure the property taken was not left to the caprice of the officer conducting the search and we do not find the warrant fatally defective simply because the descriptions could have been more precise, by for example indicating brand name or serial number. Such precision is not required, particularly in this circumstance where so many articles were stolen. Nor do we find the warrant defective simply because Sheriff Kennedy conscientiously sought the assistance of Gipson and Lightle in correctly identifying the articles stolen. This is not a case such as *Stanford v.*

*Texas,* 379 U.S. 476, 485, 85 S.Ct. 506, 511–12, 13 L.Ed.2d 431 (1965), in which the objects seized were books and similar items, and the basis for their seizure was the ideas they contained requiring a more detailed description. While exhibit 4 was not mentioned in the warrant or its incorporated list, its admission if error was harmless, not requiring reversal. *State v. Miller,* 650 S.W.2d 619, 621 (Mo. banc 1983).

Turning to defendant's "want of probable cause" contention, it is fundamental that no warrant shall issue but upon probable cause. U.S. Const. amend. IV; Mo. Const. art. I, § 15; § 542.276.10(3).[6] It is important to note at the outset that defendant by his motion to suppress challenged the facial validity and showing of probable cause in the Circuit Court of Hickory County (prior to change of venue) and the court afforded a hearing on those issues. Following that hearing defendant's motion was overruled and in effect the hearing court found the search warrant facially valid and issued on sufficient showing of probable cause. The warrant itself recites that a written application (denoted complaint) duly verified under oath was filed with the issuing judge, who acting thereon forthwith issued the warrant. Defendant in his motion to suppress concedes these matters which can only mean that the court and counsel were not only apprised that the verified application had been filed, but it is clear from the record that it had been considered by all concerned at the suppression hearing in which the motion was overruled February 3, 1982. Immediately be-

5. U.S. Const. amend. IV provides in pertinent part that "no warrants shall issue but upon ... particularly describing the place to be searched, and the persons or things to be seized." Mo. Const. art. I, § 15 provides in pertinent part that "no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the person or thing to be seized, as nearly as may be." Section 542.276.6(4), RSMo 1978, provides that the search warrant shall "[i]dentify the property which is to be searched for and seized, in sufficient detail and particularity that the officer executing the warrant can readily ascertain it," and § 542.276.10(5) provides that a search warrant shall be deemed invalid "[i]f it does not

describe the person, place, or thing to be searched or the property to be seized with sufficient certainty."

6. U.S. Const. amend. IV provides in pertinent part that "no warrants shall issue but upon probable cause, supported by oath or affirmation." Mo. Const. art. I, § 15 provides in pertinent part that "no warrant to search any place, or seize any person or thing, shall issue ... without probable cause, supported by written oath or affirmation." Section 542.276.10(3), RSMo 1978, provides in pertinent part that a search warrant shall be deemed invalid "[i]f it was issued without probable cause."

fore trial, defendant on June 15, 1982, renewed his motion, again arguing that the application and the warrant were too broad and included too many items without sufficient particularity. In response counsel for the state pointed out that there had been an earlier hearing on the motion to suppress, and on the evidence adduced and the documents involved the suppression hearing judge denied defendant's motion. Following this factual recital by the state's attorney, defendant's counsel suggested nothing indicating the recital was incorrect, instead he merely renewed the claim that the warrant was over broad and not sufficiently particular. It was the state's burden at the suppression hearing to show by a preponderance of evidence that the motion to suppress was not well taken, § 542.296.6; the trial court found that burden had been met and the court's determination of probable cause is to be accorded deference by reviewing courts. *Pennington*, 642 S.W.2d at 648. The original ruling of the Circuit Court of Hickory County which determined the efficacy of the application and warrant and overruled defendant's motion to suppress was reinforced by the subsequent ruling to the same effect on defendant's renewal of his motion before the trial court in Polk County.

■ The only unusual feature of this case arises from the fact that the office of clerk of the Circuit Court of Polk County apparently failed to retain (or at least the same cannot now be found) the *application* (and any supporting affidavits) for the issuance of the search warrant which Sheriff Kennedy had prepared and executed. An admittedly valid copy of the warrant, executed and issued by the court, is before us as part of the record on appeal. However, defendant has been unable to obtain the originals or any copies of the application or supporting affidavits.[7] Defendant nevertheless points to the statute which requires that "[t]he application and any supporting affidavits and a copy of the warrant shall be retained in the records of the court from which the warrant was issued." Section 542.276.5. He argues that probable cause for the issuance of a search warrant is to be determined from the application and any supporting affidavits, *Pennington*, 642 S.W.2d at 648, and since the clerk's office cannot now locate these items the trial court's finding of probable cause must be declared erroneous and the conviction reversed. Defendant's argument misses the mark. If in fact no sworn written application had been filed by the sheriff the warrant would have been invalid, § 542.276.10(2), but as previously discussed it is clear from the record that Sheriff Kennedy prepared, signed and presented a verified written application for issuance of a search warrant which was approved by the issuing court. Further, this occurred only after extensive investigation of the items stolen from the store and after Robert Lightle, the store manager, had prepared a detailed ten-page inventory of the missing merchandise for Kennedy. This also occurred after Kennedy had personally observed a number of the listed items in the "little side room" of defendant's house. Defendant does not suggest the appropriate documents were not presented to the court at the suppression hearing nor could it be reasonably argued that such evidence fails to provide sufficient basis for a finding of probable cause. Indeed the trial court's overruling of defendant's motion to suppress, specifically determined these matters now raised on appeal. The fact that the clerk of the court or other functionary

7. Shortly before oral argument, state's appellate counsel filed an "Exhibit A" with this Court, which purports to be a copy of the formal application for search warrant and Sheriff Kennedy's supporting affidavit. Were we to consider this exhibit as part of the record on appeal, there would be no difficulty in saying the search warrant was issued with probable cause. *See Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The affidavit sets out in detail the aforementioned events of November 5, 1981, leading up to Sheriff Kennedy's application, the items reported stolen in the Weaubleau burglary, and the items observed at defendant's residence. However, it remains defendant's burden to supply the record on appeal and as stated below he has not met the burden of demonstrating reversible error in the trial court's order, overruling the motion to suppress.

cannot now find the verified application does not disprove the fact that it was filed and presented to the circuit court at the time of issuance of the warrant. Though defendant as appellant is burdened with providing the record on appeal, Rule 30.04, he has not included a transcript of the evidence from the suppression hearing, nor does he suggest that such record, if produced, would have done other than bare out the factual matters supportive of the lower courts' rulings. As mentioned above, on appeal we defer to the ruling of the trial court and determination of probable cause until the contrary is shown. It is now the burden of defendant-appellant to show that reversible error was committed and he has failed so to do.

### III

Assuming *arguendo* the search warrant was invalid because it was issued without a verified application in proper form, should the items seized pursuant to that arguably invalid warrant have been excluded in the prosecution's case-in-chief?

In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the United States Supreme Court provided for a good-faith exception to the traditional Fourth Amendment exclusionary rule.[8] *See also Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). Noting that the exclusionary rule is not an express provision of the Fourth Amendment but instead is a judicially created remedy, 104 S.Ct. at 3412, the Court, evaluating the costs and benefits of suppressing reliable physical evidence, came down on the side of admitting inherently trustworthy tangible evidence rather than upon the side of uncertain deterrence of police misconduct. The teaching of *Leon's* good-faith exception is that evidence pursuant to a warrant issued by a detached and neutral magistrate should not be excluded, irrespective of the actual validity of the warrant, so long as the officer conducting the search acted in objectively reasonable reliance on that warrant.[9]

The court of appeals filed its opinion July 23, 1985, at which time this Court had not yet adopted *Leon*. Subsequently, in *State v. Sweeney*, 701 S.W.2d 420 (Mo. banc 1985), we relied upon *Leon's* good-faith exception, determining that it applied with equal force to a claim under the Missouri Constitution. *Id.* at 425 n. 4, 426. There, rather than finally resolve the question of whether Missouri permits anticipatory search warrants, we concluded that even if the considered warrant were invalid, the evidence seized was admissible because the officers "acted in reasonable reliance on a search warrant issued by a detached and neutral judge." *Id.* at 426. We thus implicitly modified Missouri's judicially created exclusionary rule, *see, e.g., State v. Hunt*, 280 S.W.2d 37, *State v. Owens*, 302 Mo. 348, 259 S.W. 100 (Mo. banc 1924),[10] to allow for *Leon's* good-faith exception.

**8.** In *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), the United States Supreme Court held that in a federal prosecution the Fourth Amendment barred the use of evidence secured through an illegal search and seizure. In *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the Court held that the *Weeks* exclusionary rule applied to state prosecutions as well.

**9.** The exclusionary rule's good-faith exception, *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), does not of course completely abolish the exclusionary rule, rather it is an exception to the rule. The exclusionary rule still should operate to bar the evidence where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," "where the issuing magistrate wholly abandoned his judicial role," where "a warrant [is] based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,' " or where "a warrant [is] so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* at 3421–22. We also emphasize that the United States Supreme Court to date has not applied *Leon's* good-faith exception to warrantless searches. *See State v. Blair*, 691 S.W.2d 259, 264 (Mo. banc 1985). *But cf. id.* at 267 (Blackmar, J., dissenting).

**10.** In *State v. Hunt*, 280 S.W.2d 37, 39 (Mo. 1955), and *State v. Owens*, 302 Mo. 348, 259 S.W. 100 (Mo. banc 1924), we applied the exclu-

We reject the notion advanced by defendant that an exception-less exclusionary rule is constitutionally or statutorily mandated in Missouri. The exclusionary rule is no more an express provision of Mo.Const. art. I, § 15, than it is of U.S.Const. amend. IV. Furthermore it is clear that § 542.276.10(2) requires that a search warrant should not issue except upon a verified application or complaint, otherwise it shall be invalid. However, in the case *sub judice* as discussed above the requirements of the statute were met at the time of issuance and so determined by the suppression court. Hence this contention of defendant is not well taken. Defendant next in effect argues that we should read § 542.296 to establish a *per se* exclusionary rule, but we do not agree. That statutory section outlines the proper procedures regarding a motion to suppress, *e.g.*, placing the burden upon the state to show by a preponderance of the evidence that the motion to suppress should be overruled, § 542.296.6, and sets forth appropriate grounds upon which to base a motion to suppress, § 542.296.5.[11] We do not read § 542.296.5 so broadly as to preclude us from adopting a good-faith exception to what has heretofore been a judicially created remedy.

Applying the good-faith exception to the present facts, we hold that it was proper to admit items seized pursuant to the instant search warrant, even assuming *arguendo* that it was an invalid warrant. Kennedy,

when he applied for the warrant, knew of the Weaubleau burglary, knew that a new gray bench grinder and a large quantity of tools had been stolen, and knew that a new grinder of that description and a large quantity of tools still in their original packages were located at defendant's residence. Additionally, when Kennedy asked defendant where he had gotten the tools, defendant said it was none of Kennedy's business and told him to leave. Kennedy, rather than risking a warrantless search and seizure of the suspected items which he had plain-viewed, left and procured a warrant from a judge at 3:10 a.m. early the next morning. It was only then that Kennedy returned, bearing the facially valid search warrant, searched the premises the warrant authorized him to search and seized the articles the warrant authorized him to seize. Surely the exclusionary rule would have no deterrent effect upon officers acting in such objectively reasonable reliance upon the search warrant issued by a detached and neutral judge.

Defendant would have us reverse his conviction due to the circuit court's failure to retain the application and supporting affidavit. He in effect argues that without those documents we must assume that this case falls within an exception to *Leon*. *See supra* note 9. We disagree. We believe that in light of the sheriff's conscientious efforts and good-faith reliance upon a facially valid search warrant, it would be

---

sionary rule to Missouri prosecutions even though the United States Supreme Court did not hold the Fourth Amendment exclusionary rule, *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), to apply to state prosecutions until 1961 in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Thus prior to *State v. Sweeney,* 701 S.W.2d 420 (Mo. banc 1985), Missouri had its own exclusionary rule independent of the federal rule. However, like our federal brethren in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), we have determined it most wise to modify this judicially created doctrine to allow a good-faith exception.

**11.** Section 542.296 provides in pertinent part:
 5. The motion to suppress may be based upon any one or more of the following grounds:

(1) That the search and seizure were made without warrant and without lawful authority;

(2) That the warrant was improper upon its face or was illegally issued, including the issuance of a warrant without proper showing of probable cause;

(3) That the property seized was not that described in the warrant and that the officer was not otherwise lawfully privileged to seize the same;

(4) That the warrant was illegally executed by the officer;

(5) That in any other manner the search and seizure violated the rights of the movant under section 15 of article I of the constitution of Missouri, or the fourth and fourteenth amendments of the Constitution of the United States.

injudicious and contrary to *Leon's* teaching to exclude this evidence. Such exclusion would provide no deterrent effect. Kennedy did everything we reasonably could expect him to, as did the issuing judge so far as we can tell. We will not condemn this demonstrably proper proceeding or the reasonableness of the sheriff's action in reliance thereon merely because the application could not sometime thereafter be found in the office of the clerk. On appellate review, we need something more affirmative than mere speculation to refuse to apply the good-faith exception of *Leon*. Absence of the application and supporting affidavit, in the face of the record described above, does not present the same problem as did absence of significant portions of the trial transcript in *State v. Burke*, 684 S.W.2d 871 (Mo.App.1984), which effectively denied defendant his right of appeal. *See also State v. McCarver*, 113 Mo. 602, 20 S.W. 1058 (1893).

Finally, defendant asks that we not apply the *Leon* good-faith exception retroactively to his case. We again must reject defendant's argument, and find *Leon* applicable here. *State v. Horsey*, 676 S.W.2d 847, 851–52 (Mo.App.1984).

### IV.

The court of appeals ordered this cause transferred here that we might consider the applicability of the good-faith exception to the exclusionary rule in Missouri. Oral argument in this Court was confined to that issue and we hold that defendant's Point I demonstrates no ground for reversal. The cause is retransferred for the court of appeals to dispose of defendant's remaining points relating to sufficiency of the evidence and his sentencing as a persistent offender.

MANFORD, Special Judge, concurs.

BLACKMAR, J., concurs in separate opinion.

BILLINGS, J., concurs in separate concurring opinion of BLACKMAR, J.

HIGGINS, C.J., concurs in parts I and II and dissents in part III and concurs in separate concurring opinion of BLACKMAR, J.

WELLIVER, J., concurs in part and dissents in part in separate opinion.

DONNELLY, J., dissents in separate opinion.

ROBERTSON, J., not sitting.

BLACKMAR, Judge, concurring.

I concur except as to Part III, which I consider unnecessary to the resolution of this case.

WELLIVER, Judge, concurring in part and dissenting in part.

I agree with my brother Blackmar, J. that what is said in Part III of the principal opinion is not necessary to the resolution of this case. I write separately to emphasize that I cannot agree with how the principal opinion resolves the issue. I cannot subscribe to the principal opinion's unwillingness to treat our state constitution independent of any interpretation of the federal constitution. In recent years, our nation has witnessed what is now termed the "reemergence of state constitutional law," and a number of state courts are beginning to recognize that principles of federalism suggest that the federal constitution only provides the minimum level of protection, leaving state courts free to of interpret their own state constitutions to provide greater protection to individual liberty.[1] A

---

1. *See generally* W. Adams, The First American Constitutions: Republican Ideology and the Making of the State Constitutions In the Revolutionary Era (1980); State Supreme Courts: Policymakers in the Federal System (1982); Developments in State Constitutional Law (1985); Developments in the Law—The Interpretation of State Constitutional Rights, 95 Harv.L.Rev. 1324 (1982); Abrahamson, Reincarnation of State Courts, 36 Sw.L.J. 952 (1982); Bamberger, Boosting Your Case With Your State Constitution, 72 A.B.A. J. 49 (1986); Bator, The State Courts and Collins, Reliance on State Constitutions—Away from a Reactionary Approach, 9 Hast. Const. L. Q. 1 (1981); Galie, The Other Supreme Courts: Judicial Activism Among State

number of state courts, therefore, have rejected the reasoning of United States Supreme Court decisions and interpreted their own state constitution to provide greater protection. *See e.g., People v. Ramos,* 37 Cal.3d 136, 207 P.2d 430, 689 P.2d 430 (1984); *Right to Chose v. Byrne,* 91 N.J. 287, 450 A.2d 925 (1982); *State v. Neville,* 346 N.W.2d 425 (S.D.1984). And, in *Stringer v. State* [136 No. 54,805 (Miss. Feb. 27, 1985)], the Mississippi Supreme Court refused to adopt the reasoning of *United States v. Leon, supra,* and kept the exculsionary rule intact under the state constitution.

Determination of the issues in this case does not require either approving or disapproving the good faith exception to the exclusionary rule in Missouri. This is far too important a matter to be decided by dictum, and, when this matter is decided, it should be decided based upon our Missouri statutes and our Missouri Constitution, not by parroting the "teachings of *Leon.*"

DONNELLY, Judge, dissenting.

Article I, § 15 of the Constitution of Missouri provides "[t]hat the people shall be secure in their persons, papers, home and effects from unreasonable searches and seizures...."

In *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), and *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), the United States Supreme Court articulated The Exclusionary Rule (which holds that evidence obtained by illegal search is not admissible at trial when timely objection is made).

In *State v. Owens,* 302 Mo. 348, 259 S.W. 100 (banc 1924), a case which did not involve the United States Constitution, The Exclusionary Rule was adopted as Missouri law.

Today, the principal opinion confirms that the *Owens* rule was "implicitly modified" in a footnote in *Sweeney.*

This may be the most cavalier treatment ever given by this Court to a question of such importance.

In such circumstance, I make two tentative observations:

(1) that a search is *unreasonable* only when it is *pretextual;* and

(2) that we should overrule *Owens* and wash our hands of The Exclusionary Rule except as it may implicate the provision "[t]hat no person shall be compelled to

Supreme Courts, 33 Syracuse L.Rev. 731 (1982); Kamp, Private Abridgement of Speech and the State Constitutions, 90 Yale L. J. 165 (1980); Kirby, Expansive Judicial Review of Economic Regulation Under State Constitutions: The Case for Realism, 48 Tenn.L.Rev. 241 (1981); Levinson, Interpreting State Constitutions by Resort to the Record, 6 Fla.St.U.L.Rev. 567 (1978); Linde, E. Pluribus—Constitutional Theory and State Courts, 18 Ga.L.Rev. 165 (1984); Linde, First Things First: Rediscovering the State's Bill of Rights, 9 U.Balt.L.Rev. 379 (1980); O'Connor, Trends in the Relationship Between the Federal and State Courts from the Perspective of a State Court Judge, 22 Wm. & Mary L.Rev. 801 (1981); Pollock, State Constitutions as Separate Sources of Fundamental Rights, 35 Rutgers L.Rev. 707 (1983); Satter & Gable, Litigation Under the Connecticut Constitution—Developing a Sound Jurisprudence, 15 Conn.L.Rev. 57 (1982); Sturm, The Development of American State Constitutions, 12 Publius: J. Federalism 57 (1982); Sundequist, Construction of the Wisconsin Constitution—Recurrence to Fundamental Principles, 62 Marq.L.Rev. 531 (1979); Swindler, Minimum Standards of Constitutional Jus-

tice: Federal Floor and State Ceiling, 49 Mo.L. Rev. 1 (1984); Tarr & Porter, Gender Equality and Juciail ACtivism: The Role of State Appellate Courts, 9 Hast. Const.L.Q. 919 (1982); Utter, Freedom and Diversity in a Federal System: Perspectives on State Constitutions and the Washington Declaration of Rights, 7 U.Puget Sound L.Rev. 491 (1984); Williams, State Constitutional Law Processes, 24 Wm. & Mary L.Rev. 169 (1983); Williams, In the Supreme Court's Shadow: Legitimacy of State Rejection of Supreme Court Reasoning and Result, 35 S.C.L.Rev. 353 (1984); Wright, In Praise of State Courts: Confessions of a Federal Judge, 11 Hast. Const. L.Q. 165 (1984); Note, Rediscovering State Constitutions for Individual Rights Protection, 37 Baylor L.Rev. 403 (1985); Comment, Rediscovering the Wisconsin Constitution: Presentation of Constitutional Questions in State Courts, 1983 Wis.L.Rev. 483. *See also* Sedler, The State Constitutions and the Supplemental Protection of Individual Rights, 16 U.Tol.L.Rev. 465 (1985); Symposium: The Emergence of State Constitutional Law, 63 Tex. L.Rev. 959 (1985).

testify against himself in a criminal cause...." Mo. Const. art. I, § 19.

I dissent.