TAYLOR, Presiding Judge.
The appellant, Tony Alan Walls, appeals his conviction for receiving stolen property in the first degree, a violation of § 13A-8-16, Code of Alabama 1975. The appellant was sentenced to five years’ imprisonment; that sentence was suspended, and he was ordered to serve five years on probation and to perform 200 hours of community service, and he was fined $10,000.
The state’s evidence tended to show that on the morning of October 4, 1994, the Al-bertville Police saw Ladon Orville Haygood running from the Gilbert-Baker Ford automobile dealerships lot. Haygood testified that when he saw the police, he dropped three radios he was carrying, and ran into the woods adjacent to the dealership. The Albertville Police later apprehended him and arrested him for breaking and entering. After questioning Haygood, police learned that Haygood had planned to sell the three stolen radios to the appellant. Detective Alan Whitten spoke with Richard Baker, president of Gilbert-Baker Ford, about assisting the Albertville Police in setting up the appellant. Baker gave Detective Whitten permission to use the three radios that Haygood had stolen and an additional eight radios from the dealership for the attempted sale to the appellant. Before the sale, the Albertville Police obtained an “anticipatory search warrant” for the appellant’s place of business based on the fact that the appellant would be in possession of the stolen property.
The next day, Haygood, wired with an electronic monitoring device, entered the appellant’s place of business and proceeded to sell the appellant the eleven radios. Immediately after the sale was completed, the appellant’s place of business was searched pursuant to the search warrant and the radios were seized. The appellant was charged with receiving stolen property.
I
The appellant first contends that the trial court incorrectly charged the jury as a matter of law that the property was stolen. Specifically, he contends that the oral instruction deprived him of his right to have each element of the charge proved beyond a reasonable doubt, thereby depriving him of his right to a trial by jury.
Following the presentation of all the evidence, the trial court instructed the jury as follows with respect to the charged offense of receiving stolen property:
“I do instruct you that the property, the three radios in issue, were stolen property. You will not have to make that determinar tion. You can consider from the evidence that the property was stolen; therefore, the only thing you’ll — elements that you’ll have to decide are those that I have told you about the Defendant himself.”
(Emphasis added.)
The appellant argues in his original brief to this court and in his reply brief that the trial court’s instruction “resulted in a deprivation of appellant Walls’ right to have the prosecution prove the charge against him beyond a reasonable doubt.” Rule 18.1(a), Ala.R.Crim.P, expressly states, “Defendants in all criminal cases shall have the right to be tried by a jury.” It is a recognized right to have a jury determine each element of the charged offense.
Section 13A-8-16, Code of Alabama 1975, provides the following definition for the offense of receiving stolen property:
“(a) A person commits the crime of receiving stolen property if he intentionally receives, retains or disposes of stolen property knowing that it has been stolen or having reasonable grounds to believe it has been stolen, unless the property is received, retained or disposed of with intent to restore it to the owner.
*487 The Alabama Supreme Court in Ex parte Oswalt, noted that anticipatory search warrants are not per se unconstitutional. The question is whether the anticipatory search warrant at issue was authorized by Rule 3.8, Ala.R.Crim.P.
The appellant contends that anticipatory warrants are not allowed under the language of Ala.Code § 15-5-2, Code of Alabama 1975, and Rule 3.8, because, he says, the statute and the rule require probable cause to believe that a violation of the law has occurred or is occurring at the time the warrant is issued, not at some future point.
Here, the affidavit supporting the search warrant stated, in pertinent part:
“AFFIANT RECEIVED INFORMATION FROM [LADON] ORVILLE HAY-GOOD THAT ORVILLE HAYGOOD HAS STOLEN RADIOS/TAPE PLAYERS FROM AUTOMOBILES IN THIS AREA AND SOLD THE RADIOS/TAPE PLAYERS TO TONY WALLS. ' THE RADIOS/TAPE PLAYERS STOLEN BY ORVILLE HAYGOOD ARE EACH VALUED AT APPROXIMATELY $400.00 AND ORVILLE HAYGOOD SOLD THE RADIOS/TAPE PLAYERS TO TONY WALLS FOR $50.00 EACH. THESE TRANSACTIONS BETWEEN ‘ ORVILLE HAYGOOD AND TONY WALLS HAVE OCCURRED AT THE BUSINESS OF TONY WALLS LOCATED AT 5370 U.S. HWY 431 SOUTH, ALBERT-VILLE, ALABAMA, KNOWN AS WALLS ACCESSORIES. ORVILLE HAYGOOD HAS TOLD YOUR AFFI-ANT THAT HE SOLD A RADIO/TAPE PLAYER THAT HE STOLE FROM A VEHICLE AT GILBERT-BAKER FORD TO TONY WALLS DURING THE WEEKEND OF OCTOBER 1-3, 1994 FOR $50.00. AFFIANT STATES THAT ORVILLE HAYGOOD WAS APPREHENDED ON OCTOBER 4,1994 AT APPROXIMATELY 6:20 A.M. WHILE STEALING RADIOS/TAPE PLAYERS FROM GILBERT-BAKER FORD AND HAD IN HIS POSSESSION THREE RADIOS/TAPE PLAYERS WHICH HAVE BEEN TAKEN INTO POSSESSION OF YOUR AFFIANT AND THAT AFFIANT HAS MARKED THESE THREE ITEMS AS FOLLOWS: E-5, E-7, AND E-9.
“ORVILLE HAYGOOD HAS STATED TO AFFIANT THAT HE HAD INTENDED TO SELL THESE THREE RADIOS/TAPE PLAYERS TO TONY WALLS. AFFIANT HAS OBTAINED AN ADDITIONAL EIGHT RADIOS/TAPE PLAYERS FROM GILBERT-BAKER FORD WITH A VALUE OF APPROXIMATELY $400.00 EACH WHICH ORVILLE HAY-GOOD EXPECTS TO BE ABLE TO SELL TO TONY WALLS FOR APPROXIMATELY $50.00 EACH. THE 8 ADDITIONAL RADIOS/TAPE PLAYERS HAVE BEEN MARKED WITH THE INITIALS A.W. ORVILLE HAYGOOD HAS AGREED TO BE WIRED WITH AN ELECTRONIC MICROPHONE SO THAT AFFIANT MAY MONITOR ANY CONVERSATIONS BETWEEN TONY WALLS AND ORVILLE HAYGOOD AND THAT BASED UPON ORVILLE HAYGOOD’S PRIOR DEALINGS WITH TONY WALLS, HE EXPECTS TO SELL THE ELEVEN RADIOS/TAPE PLAYERS TO TONY WALLS FOR A SMALL PORTION OF THEIR ACTUAL VALUE.
“Affiant shows that based on the foregoing facts and information and based upon his ability to observe and monitor a future transaction between Orville Haygood and Tony Walls which is scheduled to occur within the next 48 hours, Tony Walls will have in his possession three radios/tape players stolen from Gilbert-Baker Ford and eight 'radios/tape players belonging to Gilbert-Baker Ford but which have been released to your affiant for the purpose of allowing Orville Haygood to sell to Tony Walls, Directions are as follow: from the Intersection of Hwy 75 and Hwy 431 travel south on Hwy 431 to the intersection of Chloris Street and Hwy 431. Turn Left off Hwy 431 on the Ghloris Street. The building is on the left at the corner/intersection of Chloris Street and Hwy 431. The building is grey in color with the name ‘Walls Accessories” on the front of the building. The address of the building to *488 be searched is 5370 U.S. Hwy 431 South, Albertville, Alabama.”
The order entered stated:
“THIS WARRANT FURTHER IS TO BE ISSUED ONLY UPON THE HAPPENING OF THE EVENTS MENTIONED IN PARAGRAPH # 2 OF THE SEARCH WARRANT WHICH ARE' FUTURE EVENTS FROM THE TIME OF SIGNING. THAT OFFICERS ARE TO EXECUTE THE SEARCH WARRANT ONLY AFTER BELIEVING THEY HAVE FULL PROBABLE CAUSE TO SEIZE THE ITEMS MENTIONED IN PARAGRAPH #2 OF THE SEARCH WARRANT.”
(Emphasis added.)
Whether probable cause to issue a warrant exists is to be determined by a neutral and detached magistrate. Any probable cause supplied by this affidavit is merely based on events that would occur in the future. The, “anticipatory search warrant” in Ex parte Oswalt was substantially similar to the one in the present case. The affidavit supporting the warrant in Ex parte Oswalt stated:
“ ‘My name is N.E. Willingham, I am a law officer with thee following law enforcement agency: Alabama Department of Public Safety, Narcotics Division.
[[Image here]]
‘“FURTHER, YOUR AFFIANT IS CONDUCTING AN INVESTIGATION IN TUSCALOOSA COUNTY, ALABAMA, FOCUSING ON RONALD ERIC OSWALT ... WHO RESIDES AT THE PREMISES KNOWN AS 1801 HARPER ROAD, LOT 6, QUAIL RIDGE TRAILER PARK, NORTHPORT, ALABAMA. YOUR AFFIANT HAS RECEIVED INFORMATION FROM A COOPERATING INDIVIDUAL WHO HAS IDENTIFIED OSWALT AS BEING A PERSON INVOLVED IN THE DISTRIBUTION OF [A] CONTROLLED SUBSTANCE.
“‘ON TUESDAY, 07-28-92, THE COOPERATING INDIVIDUAL STATED TO YOUR AFFIANT THAT HE HAD HAD A CONVERSATION WITH OS-WALT, IN WHICH OSWALT STATED THAT HE WAS LOOKING TO PURCHASE A QUANTITY OF COCAINE AND MARIJUANA.
“ ‘AT THE DIRECTION OF THE AF-FIANT, THE COOPERATING INDIVIDUAL MET WITH OSWALT ON WEDNESDAY, 07-29-92. AT THAT TIME THE COOPERATING INDIVIDUAL TOLD OSWALT THAT HE KNEW SOMEONE WHO HAD COCAINE AND MARIJUANA TO SELL. THE COOPERATING INDIVIDUAL TOLD OSWALT THAT THE COCAINE SOLD FOR $ 1,100 [AN] OUNCE AND THAT THE MARIJUANA SOLD FOR $ 1,400 A POUND.
“ ‘ON THURSDAY, 07-30-92, THE COOPERATING INDIVIDUAL STATED THAT OSWALT TOLD HIM THAT HE WANTED TO PURCHASE AN OUNCE OF COCAINE. OSWALT REQUESTED THAT THE TRANSACTION TAKE PLACE AROUND 10:00 A.M. ON SATURDAY, 08-01-92, AT OSWALT’S RESIDENCE IN NORTHPORT, ALABAMA.
“‘ON SATURDAY, 08-01-92, ALABAMA DEPARTMENT OF [PUBLIC] SAFETY NARCOTIC AGENT PAUL JOHNSON WILL BE WORKING IN [AN] UNDERCOVER CAPACITY POSING AS A DRUG DEALER. AGENT JOHNSON WILL HAVE A QUANTITY OF COCAINE IN HIS POSSESSION AND WILL TRAVEL TO THE RESIDENCE OF RONALD ERIC OSWALT IN NORTHPORT, ALABAMA. AGENT JOHNSON WILL HAVE A CONVERSATION WITH OSWALT CONCERNING OSWALT’S DESIRE TO PURCHASE A QUANTITY OF COCAINE. AGENT JOHNSON WILL CONDUCT A COCAINE TRANSACTION WITH OS-WALT.
“‘AGENT JOHNSON WILL HAVE ON HIS PERSON AN ELECTRONIC TRANSMITTER TO ALLOW THE MONITORING OF CONVERSATION. UPON COMPLETION OF THE COCAINE TRANSACTION AGENTS ON SURVEILLANCE WILL GO TO THE RESIDENCE OF OSWALT AND CONDUCT A SEARCH OF OSWALT AND *489 HIS PREMISES FOR THE COCAINE AND EVIDENCE OF DRUG DISTRIBUTION.
‘“Your affiant shows that based on the above and foregoing facts and information, he has probable cause to believe that the aforesaid property is concealed upon the aforesaid persons, property and/or vehicles and is subject to seizure and makes this affidavit so that a warrant may issue to search the aforesaid persons, property, and/or vehicles.’ ”
(Emphasis in original.)
The Alabama Supreme Court’s holding in Ex parte Oswalt requires that we hold that the anticipatory search warrant in this case is invalid. The Ex parte Oswalt analysis of the rules governing anticipatory search warrants states as follows:
“[We] conclude that the plain and unambiguous language of' § 15-5-2 would not provide for the anticipatory search warrant at issue in this ease. The plain language of subsections (1) and (2) of § 15-5-2, which are echoed by subsections (1) and (2) of Rule 3.8, require that the evidence to be seized be evidence of a criminal offense that has already occurred. Although subsection (3) of § 15-5-2, which is mimicked by subsection (3) of Rule 3.8, requires only the intent to commit a criminal offense rather than the actual commission of a crime, it requires that the evidence be presently in the possession of the person whose premises are to be searched. Thus, we conclude that when the legislature enacted § 15-5-2, and when much of the language of that statute was adopted by this Court into one of the Rules of Criminal Procedure, without any expression of a differing, more expansive intent, there was no intent to allow the issuance of a search warrant where, as in this case, the crime to which the evidence at issue relates has not yet occurred and the evidence to be seized is not presently in the possession of the person whose premises are to be searched.
“Even though the Rules of Criminal Procedure are ‘intended to provide for the just and speedy determination of every criminal proceeding,’-Rule 1.2, Ala.R.Crim. P., that charge alone does not lead us to so expand the meaning of the clear language of Rule 3.8 so as to allow for the anticipatory search warrant at issue. That is our conclusion, notwithstanding the fact that Rule 3.8 added subsection (4), which has no equivalent in § 15-5-2. Like subsections (1) and (2) of Rule 3.8, subsection (4) also requires that the criminal offense have been committed before the search warrant may be issued.”
(Emphasis in original.)
In this case, the appellant’s purchase and possession of the stolen radios had not yet occurred and the evidence was not in his possession when the search warrant was issued. Accordingly, the requirements of Rule 3.8 had not been met when the search warrant was issued, and therefore, the warrant was not valid under Alabama law. Ex parte Oswalt.
In the alternative, the State contends that if the warrant fails, the search was still lawful because, it argues, the officers were relying on this court’s ruling in Oswalt v. State, 686 So.2d 361 (1994), in which we held that such anticipatory search warrants were valid. Relying on the United States Supreme Court’s holding in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); Arizona v. Evans, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995); and Ex parte Morgan, 641 So.2d 840 (Ala.1994), the state argues that the evidence obtained in violation of the Fourth Amendment should not be excluded from the state’s case-in-ehief. The state contends that if the officer executing the warrant acted in objectively reasonable reliance on the warrant, then, based upon the good-faith exception to the exclusionary rule, the evidence should not be suppressed.
State v. Brown, 708 S.W.2d 140 (Mo.1986), summarized the good-faith exception to the Fourth Amendment’s exclusionary rule as first recognized by the United States Supreme Court in Leon as follows:
“Noting that the exclusionary rule is not an express provision of the Fourth Amendment but instead is a judicially created remedy, 468 U.S. at 906-08, 104 S.Ct. at 3412, the Court, evaluating the costs and *490 benefits of suppressing reliable physical evidence came down on the side of admitting inherently trustworthy tangible evidence rather than upon the side of uncertain deterrence of police misconduct. The teaching of [United States v.] Leon’s [468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) ] good-faith exception is that evidence pursuant to a warrant issued by a detached and neutral magistrate should not be excluded, irrespective of the actual validity of the warrant, so long as the officer conducting the search acted in objectively reasonable reliance on that warrant.”
708 S.W.2d at 145.
Applying the good-faith exception to the facts presented in this case, we hold that it was lawful to receive into evidence the items seized in this case. After a diligent search of the easelaw regarding the good-faith exception as it applies to anticipatory search warrants, we have found four cases addressing this issue. A number of courts, both state and federal, have upheld the validity of anticipatory search warrants under the good-faith exeeptiori to the exclusionary rule. The appellate courts in this state have never directly addressed this issue.
In Pazos v. State, 654 So.2d 1000 (Fla.Ct.App.), review denied, 662 So.2d 932 (Fla. 1995), the Florida Court of Appeals upheld a search warrant under the good-faith exception to the exclusionary rule carved out in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1986). Before Florida’s ruling, the Idaho Court of Appeals in State v. Wright, 115 Idaho 1043, 772 P.2d 250 (Idaho App.1989), had held that the good-faith exception to the exclusionary rule applied to an anticipatory search warrant issued without probable cause. The Missouri Supreme Court in State v. Brown also held that it was proper to admit items seized pursuant to a search warrant, even assuming that it was an invalid anticipatory warrant. The New Hampshire Supreme Court in State v. Canelo, 139 N.H. 376, 653 M2d 1097 (1995) stated the following, quoting Leon regarding “anticipatory search warrants”:
“In United States v. Leon, the Court concluded that the fourth amendment does not require the suppression of evidence obtained pursuant to a constitutionally defective warrant, so long as the police acted in good faith reliance upon the warrant issued by a neutral and detached magistrate. The Court held that evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate, although ultimately found to be unsupported by probable cause, may be admitted in the government’s case in chief.”
139 N.H. at 384, 653 A.2d. at 1103. The Canelo Court invalidated the warrant based on the New Hampshire Constitution.
When the warrant in question was issued, Alabama easelaw upheld “anticipatory search warrants” identical to the one involved in this case. We hold, as did other courts in Pazos, Wright, and Brown, that the good-faith exception applied because the officers’ reliance on the warrant was objectively reasonable.
Based on the discussion in Part I of this opinion, the appellant’s conviction is reversed and this ease is remanded to the Circuit Court for Marshall County.
REVERSED AND REMANDED.
Ml the Judges concur.